STATE v. ADAM LEON LUSSIER.

130 N. W. (2d) 484.

August 21, 1964—No. 39,133.

*Frederick R. Weddel,* for appellant.

*Walter F. Mondale,* Attorney General, and *Linus J. Hammond,* Assistant Attorney General, for respondent.

MURPHY, JUSTICE.

This is an appeal from conviction for the crime of burglary in the third degree under Minn. St. 621.10. The offense was committed by an Indian ward of the government within the exterior limits of the Red Lake Indian Reservation. The question presented is whether the State of Minnesota has jurisdiction of the offense charged.

From the record it appears that defendant, an enrolled member of the Red Lake Band of Chippewa Indians, together with another Indian, allegedly broke into and stole candy and cigarettes from a store located on the townsite of Redby. The property on which the offense was committed was a platted part of the townsite and privately owned. The property was originally patented to the Minneapolis, Red Lake and Manitoba Railway under the Act of February 8, 1905, 33 Stat. 708, by which the railway company was given an area of not to exceed 320 acres adjacent to its northern terminus. At the close of the state's case, defendant moved for a dismissal on the ground that prosecution of the offense was within the exclusive jurisdiction of the United States. The trial court held that the state had jurisdiction.

Defendant primarily relies on 18 USCA, § 1151(a, b), which defines the term "Indian country" as "(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state."

The offense of burglary committed within Indian country is an offense denounced by 18 USCA, § 1153, which provides in part:

"Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, * * * burglary * * * within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

\* \* \* \* \*

"As used in this section, the offense of burglary shall be defined

and punished in accordance with the laws of the State in which such offense was committed."

And 18 USCA, § 1152, contains the provision that:

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country."

Defendant reasons that since he is an Indian and charged with the offense of burglary against the property of another Indian or person committed within Indian country, jurisdiction is exclusively Federal and the Minnesota courts have no jurisdiction. The state on the other hand contends that the tract of land upon which the offense was committed has lost its special status as Indian country. The state calls attention to 18 USCA, § 1162, by which statute the Federal government, with certain exceptions, has surrendered to the states and territories jurisdiction over offenses committed by or against Indians in Indian country. One of the exceptions is the Red Lake Indian Reservation. The state argues that the exception has no application here because of the Act of February 8, 1905, 33 Stat. 708, which provides in part:

"Sec. 5.   The laws of the United States now in force, or that may hereafter be enacted, prohibiting the introduction and sale of intoxicating liquors in the Indian country, shall be in full force and effect throughout the territory hereby granted, until otherwise directed by Congress or the President of the United States, and for that purpose said tract shall be held to be and to remain a part of the diminished Red Lake Indian Reservation."

The state interprets the foregoing provision as meaning that the Red Lake Reservation includes "only such lands as are exclusively reserved by the United States for the Indians, and not properties that heretofore have been conveyed by the United States to private parties."

Before discussing the authorities as they bear upon the conflicting claims of the parties, it should be briefly observed that Red Lake Reservation has always been unique among Minnesota Indian reserva-

tions.[1] Historically, the Red Lake Band never ceded what is now its reservation, and so did not acquire its land from the United States, and was not subjected to the various transfers and readjustments which most of the other Indians in the state have faced. More important, the Red Lake Band alone decided to retain its land in tribal ownership. The result is that there were recently 284 allotted acres in the reservation and 573,240 in tribal trust, compared with 168,145 allotted and 92,610 in tribal trust in the rest of the state. Thus, "Red Lake alone remains as a virtually solid block of Indian land, while the other reservations are permeated with non-Indian landholders." 39 Minn. L. Rev. 853, 863. There are scattered parts of the Red Lake Reservation extending north from Red Lake into the northwest angle, a distance of approximately 120 miles, but Redby is in the main compact area of the reservation centered around Lower Red Lake, within 5 miles of the village of Redlake, the seat of tribal government.

The extent of the state's jurisdiction as it applies to Indian wards of the government on the Red Lake Reservation has been discussed at length in several Minnesota cases. They are State v. Jackson, 218 Minn. 429, 16 N. W. (2d) 752; State v. Holthusen, 261 Minn. 536, 113 N. W. (2d) 180; and In re Settlement of Beaulieu, 264 Minn. 406, 119 N. W. (2d) 25. In the Jackson case we discussed at some length the development of the term "Indian country" and said (218 Minn. 431, 16 N. W. [2d] 754):

"* * * But it is * * * uniformly held that, absent a treaty or federal statute conferring it, a state's jurisdiction does not extend over the individual members of an Indian tribe maintaining their tribal relations and organization upon a reservation within the geographical limits of the state. Such tribes are domestic, dependent communities under the guardianship, protection, and exclusive jurisdiction of the federal government, with the power of regulating their own internal and social relations, except as otherwise directed by Congress."

In the Holthusen case we held that the State of Minnesota has juris-

---

[1]A brief history of the relationship of the Chippewas with the Federal and state governments may be found in 39 Minn. L. Rev. 853.

diction over crimes committed by non-Indians against non-Indians on Indian land in Minnesota. In the Beaulieu case we held that although members of the Red Lake Band of Chippewa Indians are citizens and residents of Minnesota, jurisdiction necessary for enforcement of poor-relief laws does not extend to enrolled members of the Red Lake Band of the Chippewa Indians while residing on the reservation. With reference to the status of those Indians, we there said (264 Minn. 413, 119 N. W. [2d] 30):

"Minnesota does not have general jurisdiction over enrolled members of the Red Lake Band of the Chippewas residing on their reservation. * * * this reservation enjoys a peculiar status among Indian reservations in this and other states. The Federal government has never transferred its exclusive and unlimited jurisdiction over this territory and the tribal members living there to our state except to enforce state sanitation and quarantine laws, to make inspection of health and educational conditions, and to enforce our compulsory school attendance laws. All other civil and criminal jurisdiction over these Indians expressly or by implication remains vested in the Federal government, exercised either by it or by the Indians under authorized tribal self-government."

The term "Indian country" has been variously defined at various times and for various purposes.[2] It is unnecessary for the purposes of this opinion to analyze or attempt to reconcile those authorities. It is sufficient to emphasize that we must be controlled by the definition which the Supreme Court of the United States gives the term "Indian country." Seymour v. Superintendent of Washington State Penitentiary, 368 U. S. 351, 82 S. Ct. 424, 7 L. ed. (2d) 346, in interpreting the provisions of 18 USCA, § 1151, has left no doubt that whatever may have been the prior law, the land in question here is now Indian

---

[2] Browning v. United States (8 Cir.) 6 F. (2d) 801; Donnelly v. United States, 228 U. S. 243, 33 S. Ct. 449, 57 L. ed. 820; State v. Jackson, 218 Minn. 429, 16 N. W. (2d) 752; Bates v. Clark, 95 U. S. 204, 24 L. ed. 471; Williams v. United States (9 Cir.) 215 F. (2d) 1; Kills Plenty v. United States (8 Cir.) 133 F. (2d) 292, certiorari denied, 319 U. S. 759, 63 S. Ct. 1172, 87 L. ed. 1711.

country. In the Seymour case the Supreme Court of the United States considered the jurisdiction of the courts of the State of Washington to try for burglary an enrolled member of the Colville Indian Tribe when the alleged offense occurred within the limits of the Colville Indian Reservation. The offense occurred on land patented to a non-Indian in the governmental townsite of Omak, laid out by the Federal government pursuant to a 1906 act which opened the reservation to homesteading, subject to Indian allotment rights. The major part of the decision deals with the question of whether the Colville Reservation had been disestablished, a question we are not faced with here. But, after deciding that the reservation continued to be in existence, the court disposed of the contention that the particular land in question was not "Indian country." The court said (368 U. S. 357, 82 S. Ct. 428, 7 L. ed. [2d] 350):

"* * * This contention is not entirely implausible on its face and, indeed, at one time had the support of distinguished commentators on Indian Law. But the issue has since been squarely put to rest by congressional enactment of the currently prevailing definition of Indian country in § 1151 to include 'all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent * * *.' "

The court pointed out that if jurisdictions depended on ownership of particular parcels of land, "law enforcement officers operating in the area will find it necessary to search tract books in order to determine whether criminal jurisdiction over each particular offense, even though committed within the reservation, is in the State or Federal Government." 368 U. S. 358, 82 S. Ct. 428, 7 L. ed. (2d) 351.

This decision of the United States Supreme Court is, of course, binding on state courts in its interpretation of Federal law. It thus seems settled that all land within the limits of a reservation is "Indian country" as defined in 18 USCA, § 1151. An examination of other authorities supports this conclusion. State ex rel. Irvine v. District Court, 125 Mont. 398, 239 P. (2d) 272; State ex rel. Bokas v. District Court, 128 Mont. 37, 270 P. (2d) 396; In re Andy, 49 Wash. (2d) 449, 302 P. (2d) 963; Guith v. United States (9 Cir.) 230 F. (2d) 481.

We are of the view that the state places too great emphasis on the phrase "diminished Red Lake Indian Reservation" as found in section 5 of the Act of February 8, 1905, 33 Stat. 708. The reservation was, of course, diminished in the sense that the land owned by the tribe was reduced; but the language of the act itself manifests an intention of Congress to treat the reservation, including patented land within it, as a unit. The fact that the government is willing to allow the reservation land to be used for railroad or other purposes as well as for the Indians does not require the conclusion that Federal jurisdiction over Indian wards should be surrendered. It is the status of the Indian ward within the reservation that is of controlling consideration and not the ownership of the particular tract of land on which the offense was committed.

Here defendant was a subject of Federal authority within the state at the time of the alleged offense. We accordingly conclude that the State of Minnesota has no jurisdiction over the offense charged against an enrolled member of the Red Lake Band of Chippewa Indians committed within the exterior limits of Red Lake Reservation regardless of the nature of ownership of the particular plot where the offense occurred.

It appears that counsel for defendant was appointed by the trial court and that he has prosecuted this appeal in good faith and upon reasonable grounds; accordingly, he is entitled to compensation and expenses incurred pursuant to Minn. St. 611.07 to be paid by the county treasurer upon certification by the clerk of this court. Upon a proper showing of indigence of defendant with an accompanying statement as to expenses incurred in the prosecution of the appeal, an order for reimbursement and reasonable attorney's fees will forthwith be issued and certified by the clerk of this court to the county treasurer.

Reversed.