ROMAN SIGANA v. ALLEN BAILEY AND ANOTHER.

164 N. W. (2d) 886.

January 31, 1969—No. 41190.

*Hoag, Edwards, Edgerton & Theobald* and *Rodney J. Edwards,* for appellants.

*Smith, McRae & Hilligan,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the District Court of Beltrami County denying defendants' motion for dismissal under Rule 12.02, Rules of Civil Procedure, on the ground that the court lacks jurisdiction over the cause of action and over the defendants and on the further ground of insufficiency of process.

The facts are not in dispute and may be briefly stated. Plaintiff sues to recover for personal injuries sustained while riding as a passenger in an automobile owned and driven by one of the defendants when it collided with an automobile owned by the other defendant on State Trunk Highway No. 1 [1] within the territorial limits of the Red Lake Indian Reservation. Plaintiff and both defendants are enrolled members of the Red Lake Band of Chippewa Indians and were residents of the reservation at the time of the collision. The summons and complaint were served upon the defendants within the reservation.

The trial court denied the motion to dismiss on the grounds, as stated in its memorandum, that the courts of this state have jurisdiction over the cause of action and over the defendants for the reason that the collision occurred while the defendants were using a state trunk highway.

It is conceded that had the collision occurred elsewhere in the reservation the courts of this state would have no jurisdiction over the cause of action or over the defendants. The only question presented here is whether use of a state trunk highway within the reservation confers on the courts of this state jurisdiction over a cause of action resulting from a collision on the trunk highway.

The origin of Trunk Highway No. 1 on the reservation is not entirely clear from the record, but it appears that originally the roadway was

---

[1] State Trunk Highway No. 1 runs east and west through the entire state. A part of it passes through the Red Lake Indian Reservation.

graded in 1938 or 1939 by the Branch of Roads, Bureau of Indian Affairs. There is no evidence that there was any formal acquisition of right-of-way by the Bureau of Indian Affairs and there is no evidence in the record that the State Department of Highways has ever acquired a right-of-way. It does appear in defendants' brief and appendix that the Minnesota Department of Highways, without any transfer or acquisition of right-of-way, constructed a bituminous surface course on the roadway theretofore prepared by the Bureau of Indian Affairs and that for many years the Minnesota Department of Highways has maintained the highway.

Our prior decisions have exhaustively discussed the status of Indians residing on reservations in this state and the jurisdiction of our courts over criminal and civil proceedings arising from actions within the reservation. We see no reason for restating what has already been discussed in these prior decisions. See, for example, State v. Cooney, 77 Minn. 518, 80 N. W. 696; State v. Cloud, 179 Minn. 180, 228 N. W. 611; State v. Jackson, 218 Minn. 429, 16 N. W. (2d) 752.

The peculiar status of enrolled Indians residing in the Red Lake Indian Reservation has been thoroughly discussed in State v. Holthusen, 261 Minn. 536, 113 N. W. (2d) 180; In re Settlement of Beaulieu, 264 Minn. 406, 119 N. W. (2d) 25; and State v. Lussier, 269 Minn. 176, 130 N. W. (2d) 484.

The law is clear that until the Federal government by act of Congress or otherwise transfers its exclusive jurisdiction over Indians residing within a reservation to the state, the state has no jurisdiction over criminal or civil actions arising between Indians residing in the reservation. As we have stated in several former decisions, in 1953 the Federal government under Public Law 280 [2] transferred such jurisdiction to the state in all reservations in the state except the Red Lake Reservation. As amended, this law may now be found codified in 28 USCA, § 1360, and so far as material here reads:

"(a) Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to

---

[2] 67 Stat. 588. See, 28 USCA, § 1360; 18 USCA, § 1162.

which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

\* \* \* \* \*

"Minnesota . . . All Indian country within the State, *except the Red Lake Reservation.*" (Italics supplied.)

Apparently the only statutory definition of Indian country as used in the Federal statutes is to be found in 18 USCA, § 1151, which reads as follows:

"Except as otherwise provided in sections 1154 and 1156 of this title, the term 'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, *including rights-of-way running through the reservation,* (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." (Italics supplied.)

The exceptions to this definition of Indian country contained in §§ 1154 and 1156 are of interest in that, in dealing with the dispensing or possession of intoxicating liquors, Congress excluded from the above definition certain portions of the reservation in the following terms (§§ 1154[c] and 1156):

"The term 'Indian country' as used in this section does not include fee-patented lands in non-Indian communities *or rights-of-way through Indian reservations,* and this section does not apply to such lands or rights-of-way in the absence of a treaty or statute extending the Indian liquor laws thereto." (Italics supplied.)

There is no provision excluding from the definition of Indian country tort actions, such as we have here, arising within the reservation.

Apparently the exclusion of the Red Lake Reservation from Public Law 280 (28 USCA, § 1360) was done out of deference to the wishes of the Red Lake Band of Indians. See, Note, 39 Minn. L. Rev. 853, 867.

We come, then, to the crucial question involved in this case. Does the mere fact that the State Department of Highways has improved and maintains State Trunk Highway No. 1 within the reservation give to our state courts jurisdiction over tort actions arising out of an automobile collision on that part of the highway? The trial court answered this in the affirmative. We are convinced it must be answered in the negative.

In State v. Lussier, *supra*, which involved the commission of the crime of burglary within the Red Lake Indian Reservation on property privately owned, we held that our courts had no jurisdiction in the prosecution for the crime. In so doing we said, among other things (269 Minn. 182, 130 N. W. [2d] 488):

"* * * The fact that the government is willing to allow the reservation land to be used for railroad or other purposes as well as for the Indians does not require the conclusion that Federal jurisdiction over Indian wards should be surrendered. *It is the status of the Indian ward within the reservation* that is of controlling consideration and not the ownership of the particular tract of land on which the offense was committed." (Italics supplied.)

The case of Seymour v. Superintendent of Washington State Penitentiary, 368 U. S. 351, 82 S. Ct. 424, 7 L. ed. (2d) 346, involved the review of a decision of the State of Washington denying a writ of habeas corpus sought by an Indian residing on an Indian reservation following his conviction for the crime of burglary. In holding that the state courts had no jurisdiction, the United States Supreme Court, in disposing of the argument that jurisdiction existed because the crime was committed on land within the reservation held under patent in fee by a non-Indian, said (368 U. S. 357, 82 S. Ct. 428, 7 L. ed. [2d] 350):

"* * * This contention is not entirely implausible on its face and, indeed, at one time had the support of distinguished commentators on In-

dian Law. But the issue has since been squarely put to rest by congressional enactment of the currently prevailing definition of Indian country in § 1151 [18 USCA, § 1151] to include 'all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent * * *.' "

We assume that the words within the same statute, "including rights-of-way running through the reservation," would carry with them the same implication.

There have been a few cases from foreign jurisdictions passing upon substantially the same question as we have involved here.[3]

In the case of State v. Begay, 63 N. Mex. 409, 320 P. (2d) 1017, an Indian residing within the Indian reservation was convicted of traffic violations occurring on a United States highway running through the reservation. In holding that the state courts of New Mexico had no jurisdiction over the prosecution for commission of these violations, the court said (63 N. Mex. 412, 320 P. [2d] 1019):

"The State of New Mexico lacks jurisdiction over Indian lands within the state until and unless the title of the Indian or Indian Tribes shall have been extinguished. Until such extinguishment of title, the lands involved are subject to the absolute jurisdiction and control of the Congress of the United States. Constitution of New Mexico, Art. XXI, Sec. 2. We hold that the authority under which the State was permitted to construct Highway 666 through, and over, the Navajo Indian reservation failed to extinguish the title of the Navajo Indian Tribe."

In the Begay case the highway was constructed under a grant from the United States to the State of an easement to the right-of-way, but not the fee title.

While the Begay case involved criminal violations, the case of Valdez v. Johnson, 68 N. Mex. 476, 362 P. (2d) 1004, involved facts almost identical to those now before us. In reviewing some of the cases, including State v. Begay, *supra*, the New Mexico court held that the state

---

[3] In addition to those discussed, see Montoya v. Bolack, 70 N. Mex. 196, 372 P. (2d) 387, and State ex rel. Irvine v. District Court, 125 Mont. 398, 239 P. (2d) 272, for exhaustive discussions of the subject involved here.

courts had no jurisdiction over the civil action, and said (68 N. Mex. 478, 362 P. [2d] 1006):

"In State v. Begay, supra, we held that where the authority under which the State was permitted to construct a highway over a Navajo Indian Reservation failed to extinguish title of the Navajo Indian Tribe to the lands in question and, in view of the fact that the State had no jurisdiction over Indian lands until title of the Indian had been extinguished, the State did not have jurisdiction over an Indian driving an automobile on a portion of the highway in the Navajo Reservation."

The case of Smith v. Temple (S. D.) 152 N. W. (2d) 547, also involved facts practically identical with those before us. There the plaintiff and two defendants were enrolled members of the Oglala Sioux Tribe and residents of the Pine Ridge Indian Reservation. One of the defendants was a non-Indian. An automobile accident in which the plaintiff was injured occurred within the limits of the reservation. The defendants were served with process within the reservation. The court dismissed the action for lack of jurisdiction. In affirming, the South Dakota court, among other things, said (152 N. W. [2d] 547):

"Civil and criminal jurisdiction of state courts over Indians and Indian country are coincidental branches of the same tree. * * *

* * * * *

"* * * The concept of inherent state jurisdiction over Indian Reservations was laid to rest by the United States Supreme Court in Williams v. Lee (1959), 358 U. S. 217, 79 S. Ct. 269, 3 L. Ed. 2d 251, in which the Worcester v. State of Georgia, 6 Pet. 515, 8 L. Ed. 483 doctrine of tribal sovereignty was reaffirmed * * *."

The only case that has come to our attention where the holding is to the contrary is Vermillion v. Spotted Elk (N. D.) 85 N. W. (2d) 432, but we are unable to reconcile that decision with Williams v. Lee, 358 U. S. 217, 79 S. Ct. 269, 3 L. ed. (2d) 251. Under Williams, it is clear that it is still the law that a state has no jurisdiction, civil or criminal, over Indians residing in an Indian reservation, absent a grant of such jurisdiction by the Federal government.

As has been shown above, Minnesota has been granted such jurisdiction under 28 USCA, § 1360, over Indians residing on all reservations within the state except the Red Lake Reservation. Here, the law as stated in Williams still prevails.

The Red Lake Band of Indians on the Red Lake Indian Reservation has adopted a constitution and bylaws and has established courts in which a cause of action such as we have before us may be tried. Under these circumstances it is futile to contend that assumption of jurisdiction by our state courts would not interfere with the operation of the tribal courts. In Williams, the court said (358 U. S. 223, 79 S. Ct. 272, 3 L. ed. [2d] 255):

"There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves. * * * The cases in this Court have consistently guarded the authority of Indian governments over their reservations. Congress recognized this authority in the Navajos in the Treaty of 1868, and has done so ever since. If this power is to be taken away from them, it is for Congress to do it."

That is true of the case now before us. Under the facts of this case it is quite clear that the highway involved is maintained by the State of Minnesota without the extinguishment of any title held by the Red Lake Band of Indians. We assume that our state is there by permission of the Indian Department but could be ousted if the proper Federal agencies saw fit to take such action. As we said in State v. Lussier, *supra,* it is the status of the Indians involved that controls and not the place where the collision out of which the cause of action arose took place, so long as it is within the borders of the Indian reservation. We are satisfied that under these conditions the courts of the State of Minnesota have no jurisdiction over the cause of action involved.

In view of our decision on this issue, we need not determine whether service of process within the reservation was effective or not. The decision of the trial court must be reversed.

Reversed.