STATE of Minnesota, By its MINNESO-
TA STATE ETHICAL PRACTICES
BOARD, Respondent,

v.

The RED LAKE DFL COMMITTEE,
Appellant.

No. 51160.

Supreme Court of Minnesota.

Feb. 13, 1981.

Edwards, Edwards & Bodin, Duluth, for appellant.

Warren Spannaus, Atty. Gen., D. Douglas Blanke, Sp. Asst. Atty. Gen., St. Paul, for respondent.

SIMONETT, Justice.

The Red Lake DFL Committee appeals from an order of the district court holding it and its president, Roger Jourdain, in civil contempt for their failure to comply with an earlier order directing that the Committee register with the State Ethical Practices Board as a political committee or register a political fund pursuant to Minn.Stat. § 10A.14 (1978), select and identify a treasurer pursuant to sections 10A.11, subd. 1; 10A.12, subd. 3; and 10A.14, subd. 2(c) (1978), and file a report of the Committee's receipts and expenditures for 1978 pursuant to section 10A.20 (1978). We affirm the district court's determination that the Committee's activities were subject to these statutory provisions.

After the Committee had ignored requests that it comply with Chapter 10A, the Board brought an action for a mandatory injunction against the Committee and its then treasurer, Lummy Oliver, in July 1979, serving a summons and complaint on Jourdain at Grand Rapids, Minnesota. No answer was interposed. A motion for a default judgment was served on Jourdain by mail, with no response. Following a default hearing on December 17, 1979, the court issued its order directing defendants to comply with Chapter 10A. A copy of the

order was personally served on Jourdain the following day at Bemidji. Soon after, the Committee moved for vacation of the judgment, asserting the court lacked jurisdiction. The Board, in turn, moved for an order finding the Committee and Jourdain in contempt for willful noncompliance with the December 17 order.

Both motions came on for hearing on February 19, on the following stipulated facts: The Red Lake DFL Committee was formed within the territorial boundaries of the Red Lake Reservation, all of its members were residents of the reservation, and Jourdain was its president. In November 1978 the Committee, for over $100, purchased two full-page political advertisements in the *Bemidji Pioneer*. The advertisements were addressed "TO ALL MINNESOTA INDIAN VOTERS" and also urged "all the DFL'ers and Independents" to vote for the Democratic candidates for governor, the state legislature, and the United States Congress. The editor of the newspaper solicited the advertisements, meeting with the Committee at the tribal office on the reservation. The Committee's treasurer paid for the ads with a check drawn on a bank located outside the reservation. The *Bemidji Pioneer* is a newspaper of general circulation, published outside the reservation, in Bemidji, and the advertisements went to approximately 7,400 households in Beltrami County and surrounding counties. Some 300 to 350 copies of the newspapers were delivered within the reservation.

On February 25, 1980, the trial court issued its order, finding the suit and contempt papers had been properly served, that the court had subject matter jurisdiction, and that the order of December 17 was valid. The court further concluded that the Committee and Jourdain were in contempt for knowingly and willfully refusing to comply with the December 17 order and imposed a forfeiture of $250 for each day, beginning 30 days after February 25, 1980, that noncompliance continued. Following the Committee's appeal, the trial court entered a further order, staying the forfeiture provision until 30 days after the decision of this court.

It has long been established that the Red Lake Band of Chippewa Indians at the Red Lake Reservation has a special status among Indians of this state. With a few exceptions not relevant here, the federal government has never transferred its exclusive and unlimited jurisdiction over the Red Lake Band to the State of Minnesota. Consequently, the Band enjoys unique self-government. In *Red Lake Band of Chippewa Indians v. State*, 311 Minn. 241, 248 N.W.2d 722 (1976), two principles were set out—

> First, the State of Minnesota has no authority to govern the affairs of persons *within* the territorial boundaries of the Red Lake reservation except as specifically authorized to do so by Congress. * * *
>
> Second, the State of Minnesota does have authority to require that persons subject to the jurisdiction of the Red Lake Band submit to the governing authority of the State of Minnesota with respect to activities occurring within the territorial limits of Minnesota and *without* the territorial boundaries of the reservation.

*Id.* at 247, 248 N.W.2d at 726 (footnote omitted). In addition, we went on to add a third principle:

> Apart from the requirements of the Federal Constitution, the State of Minnesota, as a matter of state policy and with due regard for the unique status of the Red Lake Band of Chippewa Indians under the laws of the United States and of this state, should not, in the absence of some compelling state interest, impose burdens upon persons subject to the governing authority of the Red Lake Band when such burdens will undermine the effectiveness of the band's efforts to achieve effective self-government.

*Id.* at 247–48, 248 N.W.2d at 727.

In a number of cases we have recognized instances where this state lacks authority to govern the affairs of those within the reservation. For example, in *Red Lake Band*, we held the state was required to honor a

motor vehicle registration ordinance adopted by the tribal council; in *Commissioner of Taxation v. Brun*, 286 Minn. 43, 174 N.W.2d 120 (1970), we held the state could not impose taxes on members of the Band for earnings from employment on the reservation; in *Sigana v. Bailey*, 282 Minn. 367, 164 N.W.2d 886 (1969), we held a state court did not have jurisdiction over an action arising out of a collision between automobiles owned by members of the Band on a highway within the reservation maintained by the State Department of Highways; and *In re Settlement of Beaulieu*, 264 Minn. 406, 119 N.W.2d 25 (1963), we held the jurisdiction necessary for enforcement of poor-relief laws did not extend to an enrolled member of the Band while living on the reservation.

Here defendants assert the political committee's activities occurred within the confines of the reservation and, consequently, the state lacks jurisdiction to impose the requirements of Chapter 10A on its activities. We conclude, however, as did the trial court, that while the activities of the Red Lake DFL Committee may have originated within the reservation boundaries, those activities also extended beyond, affecting persons outside the reservation and, indeed, were intended to do so. The advertisements the Committee sponsored and paid to have disseminated demonstrate an intention to influence voters living outside the reservation since they were addressed to all Minnesota Indian voters, as well as to all members of a major political party and to all independent voters. The advertisements urged election of particular candidates for statewide office, as well as for congressional and state legislative office. More than 95% of the advertisements were distributed to persons outside the reservation. Plainly, the activities put in motion by the Committee were not confined to the reservation nor were they intended to be so circumscribed. *Cf. State v. Rossbach*, 288 N.W.2d 714 (Minn.1980) (in which it was held that a shot fired from within the reservation at a sheriff standing outside the reservation's boundaries afforded the state jurisdiction to charge the shooter with aggravated assault).

Defendants say nothing they did (placing the order; signing the check) occurred outside the reservation, but they choose to ignore that what they did caused something to occur beyond the reservation boundaries, namely, the dissemination of a political message, which is the activity here sought to be regulated.

Citing *Red Lake Band*, defendants also contend that imposition of Chapter 10A imposes a burden, in the absence of a compelling state interest, which would undermine the effectiveness of the Band's efforts to achieve effective self-government. We agree with the trial court that activities initiated within the reservation and reasonably calculated to influence voters outside the reservation are a proper concern of the state and subject to its reasonable regulation. In fact, defendants did not demonstrate that compliance with Chapter 10A would have any adverse effect on tribal self-government, but even if some interference had been shown, the public interest in protecting the integrity of the election process, particularly through disclosure of significant financial influences on elected officials, is a compelling public concern. As plaintiff points out, the Red Lake Band participates in the election process, has the same interest as other voters in the integrity of that process, and has a corresponding obligation to comply with state laws which govern that process and guard its integrity. Nor is the defendant Committee being asked to do any more than other organizations outside the state which are required to comply with Chapter 10A when they similarly seek to influence voters in the state.

The order appealed from is affirmed, the forfeiture provision therein to be effective 30 days after the date of filing of this opinion.

Affirmed.