**In re the Matter of the CUSTODY OF K.K.S.**

**No. C1–93–1352.**

Court of Appeals of Minnesota.

Nov. 30, 1993.

Review Denied Jan. 27, 1994.

Michael R. Ruffenach, Bemidji, MN, for appellant.

Leah J. Carpenter, Anishinabe Legal Services, Cass Lake, MN, for respondent.

Tim Arneson, Shevlin, MN, Guardian ad litem.

Shirley M. Cain, Edwards, Edwards & Bodin, Duluth, MN, for amicus curiae Red Lake Band of Chippewa Indians.

Considered and decided by SHORT, P.J., and PARKER and LANSING, JJ.

## OPINION

SHORT, Judge.

This custody dispute involves a four-year-old child who was born and raised on the Red Lake Indian Reservation until her non-Indian father removed the child from her mother's reservation home. A state court declined jurisdiction over the paternity and custody issues in favor of the tribal court. On appeal, the father argues the state court has exclusive jurisdiction. We affirm.

## FACTS

Patricia Neadeau, an enrolled member of the Red Lake Indian Nation, gave birth to K.K.S. on March 25, 1989. Neadeau lived with the child on the reservation. In 1992, Neadeau and Aaron Stenseng, a non-Indian, executed a joint Declaration of Parentage acknowledging Stenseng as the father of K.K.S. and changing the child's surname on the birth certificate.

Stenseng lived with Neadeau and K.K.S. on the reservation from October 1992 until February 1993 when, without Neadeau's knowledge or consent, he left the reservation with K.K.S. On February 18, Stenseng filed this lawsuit in Clearwater County district court. Based on Stenseng's allegation of child endangerment, a state court issued an ex parte order granting Stenseng temporary custody of K.K.S. In March, Neadeau made a motion in state court to dismiss the lawsuit for lack of subject matter jurisdiction.

The state court granted Neadeau's motion and vacated the temporary custody order on the condition that the Red Lake Nation tribal

court exercise jurisdiction over the paternity and custody matters. The tribal court immediately asserted jurisdiction and issued a temporary custody order in favor of Neadeau. Neadeau then asked the state court to expedite enforcement of that judgment and to assist in the orderly transition of physical custody of K.K.S. Stenseng petitioned for a protective order, and requested removal of the trial judge pursuant to Minn.R.Civ.P. 63.03.

After extensive negotiations, the parties reached a temporary "50–50" custody agreement pending resolution of this jurisdictional dispute. The parties' agreement was used by both the state and tribal courts as a basis for an amended custody order. Stenseng now appeals from the state court's decision to decline jurisdiction in favor of the tribal court.

## ISSUE

Does the Red Lake Nation tribal court lose jurisdiction over a custody dispute when a non-Indian parent removes a child from the reservation without the consent of the Indian parent?

## ANALYSIS

■ Jurisdictional disputes are legal questions, which we review de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984); *Mahoney v. Mahoney*, 433 N.W.2d 115, 117 (Minn.App.1988), *pet. for rev. denied* (Minn. Feb. 10, 1989). As a general rule, Minnesota courts have no jurisdiction over matters on Indian reservations unless Congress specifically grants such jurisdiction to the state. *Red Lake Band of Chippewa Indians v. State*, 311 Minn. 241, 247, 248 N.W.2d 722, 726 (1976); *Sigana v. Bailey*, 282 Minn. 367, 369, 164 N.W.2d 886, 888 (1960); Recent Case, 4 Wm. Mitchell L.Rev. 454, 455–56 (1978). In 1953, Congress passed Public Law 280 granting Minnesota general jurisdiction over criminal and civil actions on Indian reservations. *See* 18 U.S.C. § 1162 (1988) (granting criminal jurisdiction); 28 U.S.C. § 1360 (1988) (granting civil jurisdiction). The Red Lake Indian Reservation, however, was explicitly excluded from this

grant to Minnesota of general jurisdiction. 18 U.S.C. § 1162(a); 28 U.S.C. § 1360(a).

■ Despite the Red Lake Band's unique status, Minnesota has authority over persons normally under the jurisdiction of the band when they are off the reservation but within the state. *Red Lake Band*, 311 Minn. at 247, 248 N.W.2d at 726. But, in the absence of some compelling state interest, the state should not impose burdens upon persons subject to the governing authority of the Red Lake Band when such burdens will undermine the band's efforts to achieve effective self-government. *State v. Red Lake DFL Comm.*, 303 N.W.2d 54, 55 (Minn.1981) (quoting *Red Lake Band*, 311 Minn. at 248, 248 N.W.2d at 727).

■ Stenseng argues the state court has exclusive jurisdiction over custody issues involving K.K.S. because Stenseng took the child and left the geographic area of the reservation. We disagree. The record demonstrates: (a) K.K.S. was conceived and born on the reservation; (b) K.K.S. was domiciled on the reservation with her Indian mother; (c) Stenseng resided with Neadeau and K.K.S. within the boundaries of the reservation; (d) K.K.S. has familial and social relationships with tribal members; (e) the controversy causing this custody dispute arose on the reservation; (f) Stenseng removed the child from the reservation without Neadeau's permission; and (g) Stenseng alleges Neadeau is incapable of caring for K.K.S., Neadeau's apartment is a dangerous environment, and K.K.S. is in immediate danger of harm without him in the home. Given these facts, the state court and the tribal court share concurrent jurisdiction over custody matters involving K.K.S. *See* Minn.Stat. § 518.155 (1992) (providing a court may make custody decisions only where it has jurisdiction pursuant to Minn.Stat. §§ 518A.01–518A.25); Minn.Stat. § 518A.03, subd. 1(c)(2) (1992) (granting state courts authority to make custody decisions where the child is physically present in the state and an emergency situation exists because the child is subject to or threatened with mistreatment or abuse); Red Lake Tribal Code § 100.01 (extending sovereignty and jurisdiction to all places

within the boundaries of the reservation); Red Lake Tribal Code § 801.13 (granting tribal courts authority to make custody decisions). To hold that the state court has exclusive jurisdiction because Stenseng and K.K.S. have a transient presence off the reservation would sanction unilateral movement of children to gain advantage in custody disputes. *Accord* 28 U.S.C. § 1738A(c) (1988) (recognizing a child's contact with a jurisdiction, and not mere presence, confers jurisdiction); Uniform Child Custody Jurisdiction Act, Minn.Stat. § 518A.03 (1992) (providing jurisdiction based on contacts rather than mere presence to deter abductions). Stenseng admits he fled the tribal court's jurisdiction. That act does not divest the tribal court of jurisdiction over this interparental custody dispute.

■ Stenseng also argues that Minnesota case law compels the state court to exercise jurisdiction over this custody dispute. We disagree. The state court asserted jurisdiction over a custody suit involving Indian parents in *Desjarlait v. Desjarlait* only because the tribal court was without power to hear that dispute. 379 N.W.2d 139, 142–43 (Minn. App.1985), *pet. for rev. denied* (Minn. Jan. 31, 1986). Our holding in *Desjarlait* is inapplicable because of at least three distinguishing material facts: (1) the tribal court relinquished jurisdiction over custody matters; (2) the Indian father, claiming lack of state court jurisdiction, initially commenced the dissolution matter in state court rather than tribal court; and (3) the Indian mother and children resided off the reservation. In contrast, (1) the Red Lake Nation tribal court has exercised jurisdiction over the custody matter of K.K.S., (2) Neadeau has never submitted to the authority of the state court, and (3) Stenseng subjected himself to the authority of the tribal court when he chose to live on the reservation with Neadeau and K.K.S. Under these circumstances, the state court is not compelled by case law to exercise jurisdiction over matters involving K.K.S.

■ Neadeau and amicus curiae Red Lake Band argue the state's interest in this custody dispute is automatically overshadowed by tribal sovereignty. We disagree. Physical presence off the reservation and the compel-

ling state interest in child welfare justify the state court's initial exercise of jurisdiction. *Red Lake Band,* 311 Minn. at 247, 248 N.W.2d at 726. No federal law or policy preempts state power over interparental child custody disputes where the Indian child and at least one parent reside off the reservation. *See* 25 U.S.C. § 1903(1) (1988) (Indian Child Welfare Act by its terms does not apply to interparental custody disputes); *see also* Barbara A. Atwood, *Fighting Over Indian Children: The Uses and Abuses of Jurisdictional Ambiguity,* 36 UCLA L.Rev. 1051, 1075 (1989) (Public Law 280 does not adequately resolve jurisdictional disputes in certain cases).

■ While the tribal court and the state court share authority over the custody dispute involving K.K.S., we believe the state court's decision to decline jurisdiction in favor of the tribal court is proper for several reasons. First, doing otherwise would encourage parental kidnapping. *See* Parental Kidnapping Prevention Act of 1980, Pub.L. No. 96–611, § 7(c), 94 Stat. 3566, 3569 (one purpose of the Act is to deter abductions by basing jurisdiction on a child's connections with a state rather than mere presence in it); Minn.Stat. § 518A.01 (one purpose of Uniform Child Custody Jurisdiction Act is to deter abductions). Second, dismissing the state court action eliminates the possibility of conflicting decrees that would undermine the authority of both the tribal and state courts and disrupt the lives of Stenseng, Neadeau, and K.K.S. *Fisher v. District Ct.,* 424 U.S. 382, 388, 96 S.Ct. 943, 947, 47 L.Ed.2d 106 (1976) ("[State court jurisdiction] would create a substantial risk of conflicting adjudications affecting the custody of the child and would cause a corresponding decline in the authority of the Tribal Court."). Third, declining jurisdiction in favor of the tribal court recognizes the cultural identity of K.K.S. and promotes tribal integrity by acknowledging that children are vital to the continued existence of a tribe. *See* 25 U.S.C. § 1901(3) (1988) (finding "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children"); 25 U.S.C. § 1901(5) (finding state exercise of jurisdiction over Indian child cus-

tody proceedings often fails "to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families"). Fourth, this decision is consistent with the federal policy of encouraging tribal autonomy. 25 U.S.C. § 1902 (1988). Finally, the decision satisfies the parens patriae role of both the state and the tribe in protecting the welfare of the child. *See* Minn.Stat. § 518A.03, subd. 1 (recognizing Minnesota's interest in protecting the interests of the child); Red Lake Tribal Code § 801.13 (recognizing tribe's interest).

## DECISION

The state court does not have exclusive jurisdiction over this custody dispute just because Stenseng and K.K.S. have a transient presence off the reservation. Stenseng's unilateral movement of K.K.S. does not divest the tribal court of jurisdiction. While the state and tribal courts share authority over this case, the state court properly dismissed the case when the tribal court exercised its jurisdiction.

**Affirmed.**