SHAKOPEE MDEWAKANTON SIOUX (DAKOTA) COMMUNITY, et al.,
Appellants,

v.

MINNESOTA CAMPAIGN FINANCE AND PUBLIC DISCLOSURE BOARD, et al., Respondents.

No. C3–98–1727.

Court of Appeals of Minnesota.

Nov. 24, 1998.

Kurt V. BlueDog, Gregory S. Paulson, BlueDog, Olson & Small, Bloomington; and Brian B. O'Neill, Richard A. Duncan, Elizabeth H. Schmiesing, Faegre & Benson LLP, Minneapolis,for appellants.

Susan C. Gretz, St. Paul, for respondent Board.

Christian M. Sande, Minneapolis, for amici curiae Mille Lacs Band of Ojibwe Indians.

Considered and decided by TOUSSAINT, C.J., and PETERSON, and HARTEN, JJ.

## SPECIAL TERM OPINION

HARTEN, Judge.

Appellants, an Indian tribe, its political action committee, and its treasurer, moved to enjoin respondent Minnesota Campaign Finance and Public Disclosure Board from enforcing an Advisory Opinion requiring the tribe to make disclosures concerning funds supplied by the tribe to its political action committee for donation to a political party. The Mille Lacs Band of Ojibwe Indians and the Mah Mah Wi No Min I Political Fund moved to appear as amici curiae. The district court denied both motions. This court granted appellants' request for expedited review of the denial and the request of the amici curiae to submit a brief. We affirm.

## FACTS

In 1989, appellant Shakopee Mdewakanton Sioux Community (Tribe) formed appellant Political Action Committee (PAC) for the purpose of making political contributions to recipients outside the reservation. PAC is registered pursuant to Minn.Stat. § 10A.14 (1996) and required to make financial disclosures pursuant to Minn.Stat. § 10A.20 (1996).

In 1996, respondent Minnesota Campaign Finance and Public Disclosure Board (Board) learned that a political party had received a $27,500 contribution from Tribe, which, unlike PAC, was not registered and did not make disclosures. Board informed appellant Susan Totenhagen, secretary-treasurer of Tribe and treasurer of PAC, that Tribe was required to make disclosures pursuant to Minn.Stat. § 10A.22, subd. 7 (1996), governing contributions made by unregistered associations. The political party returned the $27,500 to Tribe; Tribe turned it over to PAC, and PAC contributed it to the political party, reporting the contribution but likewise making no financial disclosures to Board.

Board then informed Totenhagen that Tribe was an "association" as defined in Minn.Stat. § 10A.01, subd. 3 (1996), and was therefore obliged either to register as a Committee and be subject to disclosure requirements or to provide financial disclosures to PAC when supplying funds for political contributions. Tribe then requested an advisory opinion from Board, pursuant to Minn.Stat. § 10A.02, subd. 12 (1996).

In May 1998, Board issued Advisory Opinion 290, stating that (1) Tribe is a statutory association notwithstanding Tribe's status as a sovereign entity; (2) Tribe is not required to register or to provide all the financial disclosures specified in Minn.Stat. § 10A.20;

and (3) Tribe is required to make modified disclosures concerning the sources of funds comprising political contributions including naming either the donating entity and the nature of its business or the donating individual. Board also issued an order requiring PAC either to return the $27,500 to Tribe or to obtain disclosures of the sources of funds supplied by Tribe.

Tribe objected to being classified as an association, alleging that association is a subordinate status precluded by Tribe's status as a sovereign entity and asserting that classification of Tribe as an association is unnecessary to Board's enforcement power. Board amended Opinion 290 by deleting references to Tribe's classification as an association, but did not alter the disclosure requirements or the order. Tribe then moved to enjoin enforcement of the opinion and the order; the district court denied the motion. This appeal followed.

### ISSUE

Did the district court abuse its discretion in denying appellants' motion for an injunction?

### ANALYSIS

■ An appeal from an order denying a motion for a temporary injunction is limited in scope to whether the denial constitutes a clear abuse of discretion. *Pacific Equip. & Irrigation, Inc. v. Toro Co.*, 519 N.W.2d 911, 914 (Minn.App.1994).

> Refusing to grant a temporary injunction rests in the discretion of the district court to such an extent that appellate courts are not justified in interfering unless the action of the trial court is clearly erroneous and will result in injury which it is the duty of the court to prevent.

*Id.* On appeal, we view the facts alleged in the pleadings and affidavits most favorably to the party who prevailed in the district court. *Id.*

■ A party seeking an injunction must first establish that the legal remedy is inadequate and that the injunction is necessary to prevent great and irreparable injury. *Id.* (citing *Cherne Indus., Inc. v. Grounds &*

*Assocs., Inc.* 278 N.W.2d 81, 92 (Minn.1979)). Whether a party is entitled to temporary injunctive relief requires consideration of five factors: (1) the nature and background of the previous relationship between the parties; (2) the harm to be suffered by one party if the injunction is issued as compared to the harm to be suffered by the other party if it is denied; (3) the likelihood that the party seeking the injunction will prevail on the merits; (4) public policy considerations; and (5) any administrative burden involved in enforcement of the injunction. *Id.* (citing *Dahlberg Bros., Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965)). The district court concluded that all five *Dahlberg* factors weighed in favor of denying the injunction.

### 1. Nature of Previous Relationship Between Parties

■ The district court found that the relationship between Tribe and Board is no different from Board's relationship with any other citizen or association. Appellants argue that PAC has a unique relationship with Board because Board had a "policy" of permitting tribal committees, including PAC, to file reports showing contributions from tribes without making the statutory disclosures.

■ Although Board accepted such reports before it became aware of the situation in 1996, this acceptance resulted not from a policy decision but from ineffective enforcement procedures. A department's ineffective enforcement of a statute does not confer a privilege on one who violates the statute. *See Brown v. Minnesota Dept. of Pub. Welfare*, 368 N.W.2d 906, 912 (Minn.1985) (holding that the failure of department's computer screening process to catch the unreimbursable claims submitted by a physician did not entitle the physician to keep the erroneous reimbursements). The district court did not abuse its discretion in holding that appellants have no special relationship with Board. Board's duty to ensure Tribe's statutory compliance is no different from its duty to ensure the compliance of all contributors.

## 2. The Balance of Harm

A party requesting an injunction must show irreparable harm if the injunction is not issued, while the party opposing the injunction need only show substantial harm if it is issued. *See Pacific Equip.*, 519 N.W.2d at 915.

Appellants argue that they will be harmed irreparably if their right to make political contributions is contingent on their making the modified financial disclosures required by Opinion 290 because compelling disclosure violates their First Amendment rights. This argument is actually a challenge to the constitutionality of Minn.Stat. § 10A.20, which requires financial disclosure from political contributors.[1]

Minnesota statutes are presumed constitutional. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989). Moreover, the constitutionality of campaign finance laws has been upheld repeatedly. *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 80–82, 96 S.Ct. 612, 663–64, 46 L.Ed.2d 659 (1976) (upholding disclosure and reporting requirements of Federal Election Campaign Act); *Minnesota State Ethical Practices Bd. v. National Rifle Ass'n of America*, 761 F.2d 509, 511–12 (8th Cir.1985) (requiring lobbyists and political funds to register and file reports did not violate First Amendment right of association); *Klaus v. Minnesota State Ethics Comm'n*, 309 Minn. 430, 437, 244 N.W.2d 672, 675–77 (1976) (requiring candidate to disclose property interests does not deprive candidate of any protected constitutional right); *see also State by Minnesota State Ethical Practices Bd. v. Red Lake DFL Comm.*, 303 N.W.2d 54, 56 (Minn.1981) (a political committee composed of Indians living on a reservation was subject to Minnesota Statutes Chapter 10A when it sponsored and paid for materials disseminated off the reservation to influence voters). The district court did not abuse its discretion in refusing to grant an injunction on the ground that requiring disclosure from political contributors is unconstitutional.

Appellants cite *Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87, 91–92, 103 S.Ct. 416, 420, 74 L.Ed.2d 250 (1982), for the proposition that a disclosure statute cannot survive the strict scrutiny imposed because it encroaches on constitutional rights unless the statute serves a compelling governmental interest and there is a substantial nexus between the interest served and the information to be revealed. The disclosure requirements of Opinion 290 meet these standards.

> [T]he public interest in protecting the integrity of the election process, particularly through disclosure of significant financial influences on elected officials, is a compelling public concern.

*Red Lake*, 303 N.W.2d at 56. The disclosure required of appellants is not unconstitutional; appellants will not be irreparably harmed if Board is not enjoined from enforcing the disclosure statute.

The district court found that Board would be substantially harmed if the injunction issues because Tribe could serve as a conduit for funds of other contributors who wish to evade reporting requirements.[2] Appellants argue that this harm is speculative. Board, however, has already shown harm: Tribe, through PAC, contributed $27,500 to a political party without the requisite disclosures. While Tribe asserts that the money did not come from any outside source, Board can only be assured of this if Tribe discloses to PAC the source of the contribution.

Finally, appellants argue that Board can exist with the "status quo," i.e., without tribal disclosure of the sources of funds for political contributions, until the case is decided on its merits, and therefore will not be harmed by the injunction. But Board's function is the enforcement of the statutory disclosure re-

---

1. Appellants raise this same argument as a reason for the likelihood of their success on the merits. In neither instance do they distinguish themselves from other political contributors or address whether requiring financial disclosures imposes irreparable harm on all contributors.

2. Appellants claim that Board is not entitled to make this argument because Board stated "This opinion [290] assumes that the Tribe does not accept political contributions * * *." But Board was explaining why it did not require Tribe to register, not asserting any belief as to the sources of the funds Tribe turns over to PAC.

quirements; Board is substantially harmed by avoidance of disclosure at any time.

There was no abuse of discretion in finding substantial harm to Board if the opinion and order cannot be enforced and no irreparable harm to Tribe if they are enforced.

### 3. Likelihood of Success on the Merits

■ To succeed on the merits in review of an agency decision, a party must show that the decision, among other things, is made on unlawful procedure, exceeds agency authority, or violates constitutional provisions. *Markwardt v. State Water Resources Bd.,* 254 N.W.2d 371, 374 (Minn.1977). Appellants argue that they will succeed on the merits by showing that Opinion 290 was issued in violation of the Ethics in Government Act (EGA) and the Administrative Procedures Act (APA) because Board did not follow rulemaking requirements and exceeded its authority and that Opinion 290 is illegally being given a retroactive application.[3]

### A. Rulemaking Requirements

■ Board did not follow the rulemaking procedures set out in Minn.Stat. §§ 14.05 and 14.06 (1996) in issuing Advisory Opinion 290. Board maintains that an advisory opinion is not a rule but an enforcement action. *See Bunge Corp. v. Commissioner of Revenue,* 305 N.W.2d 779, 785 (Minn.1981) (concluding that agencies have authority to enforce the law either through rulemaking or through case-by-case adjudication).

Minn.Stat. § 14.02, subd. 4 (1996) defines a rule as: "every agency statement of general applicability and future effect * * * adopted to implement or make specific the law enforced or administered by that agency * * *." Appellants argue that Opinion 290 is a rule because it directs Board staff to take no further action to obtain disclosure "from any Indian tribe that provides financial information with its contributions in accordance with this opinion." The "any Indian tribe" language, according to appellants, makes the advisory opinion a "statement of general applicability and future effect."

But even if the opinion does include language pertaining to other tribes, appellants seek only to enjoin enforcement of the order requiring PAC either to return the $27,500 to Tribe or to obtain financial disclosures. The order is not a rule in any sense; it is manifestly an adjudication of a particular action, and Board had no need to follow rulemaking procedure in issuing it.

■ Moreover, Opinion 290 corresponds with the plain meaning of Minn.Stat. § 10A.22, prohibiting political contributions from unregistered associations unless certain disclosures are made. When an agency's interpretation of a statute coincides with the plain meaning of the statute, the agency is not deemed to have engaged in rulemaking. *See Cable Communications Bd. v. Nor–West Cable Communications Partnership,* 356 N.W.2d 658, 667 (Minn.1984). Nor is an agency's announcement of an interpretation of a statute deemed rulemaking. *See Wacha v. Kandiyohi County Welfare Bd.,* 308 Minn. 418, 421, 242 N.W.2d 837, 839 (1976). Opinion 290 announces Board's interpretation of Minn.Stat. § 10A.20 in regard to Indian tribes; it does not make a rule.

We conclude it is unlikely that appellants will prevail in showing that Opinion 290 was issued illegally because Board did not follow statutory rulemaking procedures.

### B. Exceeding Authority

■ Notwithstanding Board's deletion of all references to Tribe as an association when it amended Opinion 290, appellants argue that Board required financial disclosures from Tribe on the basis that Tribe was an association and that Board lacks authority to classify Tribe as an association. Minn.Stat. § 10A.01, subd. 3, defines "association" as

> business, corporation, firm, partnership, committee, labor organization, club, or any other group of two or more persons, which includes more than an immediate family, acting in concert.

---

3. As noted earlier, appellants also argue for success on the merits on the ground that Minn.Stat. § 10A.20 is unconstitutional. This argument is addressed supra in our discussion of the balance of harm.

Appellants argue that the exemption of Indian tribes from the definition of association should be inferred from the absence of special language including Indian tribes. But this court can neither make inferences from language omitted from a statute nor supply language to a statute. *See State v. Moseng*, 254 Minn. 263, 269, 95 N.W.2d 6, 11–12 (1959) (courts may not supply language the legislature may have omitted or overlooked).

■ Moreover, *Red Lake*, 303 N.W.2d at 56, established the authority of Board over tribal political committees. Appellants attempt to distinguish *Red Lake* on the basis that Board has authority over committees, which can be classified as associations, but not over tribes, which cannot be classified as associations because they are sovereign entities. This distinction is unpersuasive: appellants do not explain why Tribe's sovereign status is impinged by being classified as an association but not impinged by the only other classification possible under chapter 10A, that of individual.[4]

We conclude that appellants' likelihood of success on the merits in arguing Board's lack of authority appears slight.

### C. Retroactive Enforcement

■ Appellants also claim that they will succeed on the merits in arguing that Board illegally seeks retroactive enforcement of Opinion 290. But Board is not seeking retroactive disclosure concerning contributions made before the $27,500 addressed in Opinion 290 and its order; Board seeks only disclosure concerning that contribution and future contributions.

In addition, holding that enforcement of the opinion and order is illegal retroactive application would be holding that Board is estopped from requiring disclosure now because it erroneously did not require disclosure in the past. *Brown*, 368 N.W.2d at 912, holds that a department cannot be estopped unless it engaged in wrongful conduct. "The fact that the computer screening process did not catch [the] * * * error did not amount to the wrongful conduct required for estoppel against the government." *Id.* There has been no allegation of wrongful conduct in Board's previous failure to require disclosure; Board cannot be estopped from requiring disclosure now.[5]

We see no abuse of discretion in the district court's finding that appellants are unlikely to succeed on the merits in arguing that Order and Opinion 290 are illegally promulgated, are unconstitutional, and are illegally enforced.

### 4. Public Policy

Appellants argue that requiring disclosure is likely to deter contributions, which would not be in the public interest. However, having accurate and specific information on the sources of money political candidates receive, not merely on the amounts and the donors of that money, "is a compelling public concern." *Red Lake*, 303 N.W.2d at 56. Having public access to the sources of funds contributed for political purposes transcends the possible loss of some contributions.

### 5. Administrative Burden

Enforcing the injunction merely with respect to appellants would not cause a significant administrative burden. Appellants had no standing to seek to enjoin Board from obtaining disclosure from other tribes, but, if this injunction issues, an administrative bur-

---

4. Appellants also argue that Opinion 290 is not consistent with other Advisory Opinions that have established different disclosure requirements for different entities. However, advisory opinions are written to resolve particular cases; they need not be consistent. *See* Minn.Stat. § 10A.02, subd. 12(b): "A written advisory opinion issued by the board is binding on the board in any subsequent board proceeding concerning the person making or covered by the request * * *"; Minn.Stat. § 10A.02, subd. 12(c) providing that "request for an opinion and the opinion itself are nonpublic data."

5. Appellants' reliance on *NLRB v. Majestic Weaving Co.*, 355 F.2d 854, 860 (2d Cir.1966) is misplaced. First, the case has no dispositive value in a Minnesota state court. Second, its holding that "a decision branding as 'unfair' conduct stamped 'fair' at the time a party acted, raises judicial hackles" does not apply here: contributions from either PAC or Tribe that did not reveal the source of the funds being contributed were never "stamped fair"; they were statutory violations that slipped through undetected.

den could result when other tribes will seek their own injunctions.

## DECISION

The district court did not abuse discretion in concluding that all five *Dahlberg* factors weigh against issuing the injunction appellants seek.

**Affirmed.**