**Daniel Marshall HAWES, Respondent,**

v.

**1997 JEEP WRANGLER, VIN No. 1J4FY29POVP493248, License No. 874 PDG, Appellant.**

No. C3–99–782.

Court of Appeals of Minnesota.

Nov. 23, 1999.

Jeffrey W. Kennedy, David B. Boyce, Ramstad, Kennedy & Associates Chartered, Shakopee, for respondent.

Kevin W. Eide, Grannis & Hauge, P.A., Eagan, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge, RANDALL, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge.*

The State of Minnesota challenges both the district court's denial of its motion for summary judgment and its sua sponte grant of judgment in favor of respondent in this vehicle forfeiture proceeding under Minn.Stat. § 169.1217 (1998). The district court determined that forfeiture of the vehicle, used in committing respondent's third offense within five years, violated equal protection, the Double Jeopardy Clause, and the Excessive Fines Clause of both the Minnesota and United States Constitutions. We reverse and remand for entry of judgment in favor of the state.

## FACTS

On February 25, 1998, respondent Daniel Marshall Hawes was arrested for driving under the influence (DUI). Because Hawes had two separate impaired driving convictions or license revocations, both in 1997, the state seized his 1997 Jeep Wrangler and began forfeiture proceedings un-

der Minn.Stat. § 169.1217, subd. 1(c) (1998). Pursuant to the statute's procedure for judicial determination of a forfeiture, Hawes filed a civil complaint alleging that the seizure of his vehicle was improper and violated double jeopardy. After Hawes pleaded guilty to the DUI, the state moved for summary judgment in the forfeiture proceeding.

At an initial hearing, the district court entered an order conditionally granting the state's motion, provided that, among other things, the state arrange for payment of the approximate $12,000 encumbrance on the vehicle within 30 days of the order. For various reasons, the state encountered difficulty in arranging for satisfaction of the encumbrance. In an effort to comply with the order, the state presented the court with a proposed arrangement with the secured creditor, Northwest Airlines Credit Union. The credit union agreed that it would take over the vehicle, apply the sale proceeds to the loan, and reimburse the state for its actual expenses incurred in the forfeiture proceeding, provided that the district court sign an appropriate order for forfeiture.

At the December 17, 1998, rehearing of the state's motion, the district court denied the state's motion for summary judgment for failure to comply with the terms of its earlier order. The court then entered an order directing that the vehicle be released immediately to Hawes upon his payment of $911.50, the amount of actual costs and expenses the state incurred in the seizure and forfeiture action. In the memorandum attached to the order, the district court based its decision on three separate grounds: (1) the seizure and forfeiture constitutes double jeopardy, in violation of the U.S. Constitution, the Minnesota Constitution, and Minn.Stat. § 609.035; (2) the vehicle forfeiture statute constitutes "cruel and unusual punishment"; and (3) the vehicle forfeiture statute violates equal pro-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

tection because the penalty imposed for violating the statute varies according to the value of the vehicle seized.

### ISSUES

I. Does vehicle forfeiture under Minn.Stat. § 169.1217 violate constitutional prohibitions against double jeopardy?

II. Does the forfeiture of respondent's vehicle under Minn.Stat. § 169.1217 violate constitutional prohibitions against excessive fines?

III. Does vehicle forfeiture under Minn.Stat. § 169.1217 violate equal protection?

IV. Did the district court err in denying the state's motion for summary judgment?

### ANALYSIS

■ "On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). A statute's constitutionality is a question of law, which we review de novo. *Estate of Jones by Blume v. Kvamme*, 529 N.W.2d 335, 337 (Minn. 1995). One who challenges the constitutionality of a statute must overcome every presumption in favor of its constitutionality. *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979). Absent good reason, we will apply federal interpretations to a state constitutional provision with "almost identical" language to the federal. *See City of Pine Springs v. One 1992 Harley Davidson*, 555 N.W.2d 749, 752 (Minn.App.1996).

Minnesota's vehicle forfeiture statute provides for the forfeiture of a vehicle used in the commission of a "designated offense." Minn.Stat. § 169.1217, subd. 6 (1998). "Designated offense" includes a DUI violation "within five years of two prior impaired driving convictions, two prior license revocations," or one of each.

*Id.*, subd. 1(c)(1)(i) (1998). Upon commission of the designated offense, "all right, title, and interest in a vehicle subject to forfeiture * * * vests in the appropriate agency." *Id.*, subd. 3 (1998). A seized vehicle that is subject to a valid security interest remains subject to that interest. *Id.*, subd. 7(e). Once a judicial determination of forfeiture has been made, the agency must either sell the vehicle and distribute the proceeds or keep the vehicle for official use. *Id.*, subd. 9(1), (2). The agency must first use the proceeds from the sale of a forfeited vehicle to pay for costs and satisfaction of valid liens, and it must use any excess proceeds for DUI-related enforcement, training, and education. *Id.*, subd. 9(b).

### I. Double Jeopardy

■ Hawes argues, and the district court agreed, that forfeiture of his 1997 Jeep would constitute double jeopardy in violation of the United States and Minnesota Constitutions. The Fifth Amendment to the United States Constitution provides that "[n]o person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Minnesota Constitution similarly provides that "no person shall be put twice in jeopardy of punishment for the same offense." Minn. Const. art. I, § 7. "[A] criminal adjudication followed by a civil forfeiture, or vice versa, only violates double jeopardy provisions if the forfeiture constitutes 'punishment.'" *One 1992 Harley Davidson*, 555 N.W.2d at 750.

■ The district court's determination that forfeiture of Hawes's vehicle would violate double jeopardy is inconsistent with our prior holdings. *See Lukkason v.1993 Chevrolet Extended Cab Pickup*, 590 N.W.2d 803 (Minn.App.1999), *review denied* (Minn. May 18, 1999); *One 1992 Harley Davidson*, 555 N.W.2d at 749; *City of New Hope v.1986 Mazda 626*, 546 N.W.2d 300 (Minn.App.1996). Most recently, in *Lukkason*, we reiterated that Minn.Stat. § 169.1217 passes the constitutional test

for double jeopardy articulated in *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). *Lukkason,* 590 N.W.2d at 807.

In *Ursery,* the Supreme Court clarified the appropriate two-step inquiry for determining whether an *in rem* civil forfeiture is "punishment" for double jeopardy purposes. First, a court must examine the governing statute to determine whether the legislative body intended the forfeiture proceedings to be criminal/punitive or civil/remedial. *Ursery,* 518 U.S. at 288, 116 S.Ct. at 2147. Next, the court must consider whether the party challenging the statute has shown by the clearest proof that the forfeiture is so punitive in fact that it " 'may not legitimately be viewed as civil in nature.' " *Id.* (quoting *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 366, 104 S.Ct. 1099, 1107, 79 L.Ed.2d 361 (1984)). A civil *in rem* forfeiture that has some punitive aspects will not necessarily violate double jeopardy provisions if it still serves important non-punitive goals. *Ursery,* 518 U.S. at 290, 116 S.Ct. at 2148.

The parties in this case have not disputed that the legislature designed forfeiture under Minn.Stat. § 169.1217 as a civil proceeding. *See One 1992 Harley Davidson,* 555 N.W.2d at 751; *1986 Mazda 626,* 546 N.W.2d at 302. As we have recognized on more than one occasion, the legislature intended vehicle forfeiture under Minn. Stat. § 169.1217 to serve the important, nonpunitive, remedial goal of enhancing public safety by removing from repeat intoxicated drivers the instrumentality used to commit their violations. *Lukkason,* 590 N.W.2d at 806; *see also 1986 Mazda 626,* 546 N.W.2d at 303–04; *One 1992 Harley Davidson,* 555 N.W.2d at 751. We reiterated in *Lukkason:*

> The primary remedial purpose of protecting public safety is effectuated by vehicle forfeiture. The statute applies only where the driver of the vehicle has not heeded the warnings of previous sentences and license revocations. Only

where those sanctions have failed is the instrumentality forfeited as another means toward the desired end of removing intoxicated drivers from public streets and highways.

*1986 Mazda,* 546 N.W.2d at 304, *quoted in Lukkason,* 590 N.W.2d at 806.

Given the well-established intended purpose of the statute, under the test articulated in *Ursery* the sole remaining question is whether the record contains the requisite "clearest proof that the effect of the statute is so punitive that it negates the legislature's intent to establish a civil, remedial mechanism." *One 1992 Harley Davidson,* 555 N.W.2d at 751. In its decision, the district court did not specify what proof it relied upon in determining that the forfeiture would be excessively punitive. Rather, the court simply stated that any forfeiture in excess of the state's costs of $911.50 was "clearly a violation of plaintiff's rights."

This record contains no evidence, much less the "clearest proof," to support a conclusion that this forfeiture proceeding is so punitive that it can only be characterized as criminal. In fact, the record reveals that the potential financial impact of the forfeiture of this vehicle is far less than what the auto owner experienced in *Lukkason.* In *Lukkason,* we found that the forfeiture of a vehicle in which the owner had a $11,534.92 net interest was not so excessively punitive to render the proceeding criminal rather than civil. 590 N.W.2d at 807–08. Although the record does not contain a precise valuation of Hawes's vehicle, the state estimated that its sale would bring between $8,000 and $9,000. Hawes represented to the district court that the lien on the vehicle approximated $12,000. Hawes therefore has *no* net interest in the vehicle. The statute does not address the consequences should a vehicle's sale be less than its outstanding lien, and there is no information in the record concerning the arrangement between Hawes and his secured creditor. Nonetheless, even assuming Hawes were personal-

ly liable for the deficiency, that amount would still be only approximately $4,000. Whatever Hawes's potential financial loss from this forfeiture may be, it is far less than the $11,534.92 financial loss suffered by the vehicle owner in *Lukkason.*

Hawes contends that his case is distinguishable from *Lukkason* because the state will realize no financial gain from the sale of his vehicle. He argues that the purpose of the forfeiture statute cannot fairly be characterized as remedial when the public will receive no compensation or redress for his violation. Hawes's argument fails to acknowledge that, regardless of the financial outcome of the vehicle's sale, the forfeiture will also achieve the remedial purpose of removing an offending vehicle from the road.

Finally, Hawes suggests that the forfeiture of his vehicle will not further the remedial goal of protecting the public because taking away his vehicle will not prevent him from driving a different vehicle. We have previously rejected this challenge to the vehicle forfeiture statute and decline to overturn that decision here. *1986 Mazda,* 546 N.W.2d at 303.

Hawes articulates no compelling reason justifying a departure from this court's previous decisions that proceedings under the vehicle forfeiture statute do not violate double jeopardy. The district court erred as a matter of law in granting judgment to Hawes on this basis.

### II. Excessive Fines

■ In addition to granting judgment on double jeopardy grounds, the district court concluded, sua sponte, that, as a general matter, "open-ended forfeitures constitute cruel and unusual punishment, in violation of a defendant's rights." Hawes did not raise an Eighth Amendment challenge to the forfeiture below, and the court provided no factual or legal basis for its determination that, in this particular case, any forfeiture greater than the state's administrative and legal costs of

$911.50 was excessive and in violation of Hawes's rights.

■ Eighth Amendment challenges to civil forfeitures are analyzed under the Excessive Fines Clause. *Austin v. United States,* 509 U.S. 602, 621–22, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993); *City of Worthington Police Dep't v. One 1988 Chevrolet Berreta,* 516 N.W.2d 581, 583 (Minn.App.1994). A civil *in rem* forfeiture with dual remedial and punitive purposes may violate the Excessive Fines Clause even if it passes the constitutional test for double jeopardy. *Austin,* 509 U.S. at 621–22, 113 S.Ct. at 2812; *Lukkason,* 590 N.W.2d at 808. Minnesota's vehicle forfeiture statute, although styled as an action against the offending vehicle, has an obvious punitive effect on the vehicle's owner. This aspect brings the forfeiture within the purview of the Eighth Amendment, despite the statute's legitimate, additional remedial purpose of enhancing public safety. *Lukkason,* 590 N.W.2d at 807–08.

In *Lukkason,* we upheld the vehicle forfeiture against an excessive fine challenge using the "gross disproportionality" test announced by the Supreme Court in *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). *Lukkason,* 590 N.W.2d at 808. Under *Bajakajian,* forfeiture is unconstitutional "if the amount of the forfeiture is grossly disproportional to the gravity of defendant's offense." *Bajakajian,* 524 U.S. at ——, 118 S.Ct. at 2038. As we noted in *Lukkason,* the Supreme Court has not clearly mandated application of the "gross disproportionality" test of *Bajakajian* to civil *in rem* forfeitures. *Lukkason,* 590 N.W.2d at 808 (citing *Bajakajian,* 524 U.S. 321, 118 S.Ct. at 2035 n. 6). Nonetheless, even applying that test, we determined that forfeiture of a vehicle in which the owner had a net $11,534.92 interest was not grossly disproportionate to the gravity of a third DWI violation in five years, given the seriousness of the risks such behavior posed to the public. *Lukkason,* 590 N.W.2d at 808.

As noted above, Hawes faces a much smaller potential financial loss than that suffered by the owner in *Lukkason* for substantially the same designated offense. In the absence of any factual findings that distinguish this case from the proportionality determination made in *Lukkason*, the district court's decision that the forfeiture violates the Eighth Amendment was incorrect. Because the district court erred as a matter of law, summary judgment for Hawes on this basis was inappropriate.

### III. Equal Protection

Although Hawes did not raise an equal protection claim below, the district court also determined, sua sponte, that the vehicle forfeiture statute violates equal protection because the financial impact of the forfeiture can vary widely depending upon the value of the seized vehicle.

"Equal protection is an inherent but unenumerated right found and confirmed in Minnesota's state constitution." *Lundberg by Lundberg v. Jeep Corp.*, 582 N.W.2d 268, 271 (Minn.App. 1998). The Equal Protection Clause of both the state and federal constitutions requires that people in similar circumstances be similarly treated under the law. *Rocco Altobelli, Inc. v. State, Dep't of Commerce*, 524 N.W.2d 30, 37 (Minn.App. 1994). When a statute does not involve a suspect classification and does not infringe on a fundamental right, it need only be rationally related to a legitimate governmental purpose in order to withstand either an equal protection or a substantive due process challenge. *Arcadia Dev. Corp. v. City of Bloomington*, 552 N.W.2d 281, 288 (Minn.App.1996), *review denied* (Minn. Oct. 29, 1996).

Our decision in *Lukkason* is dispositive on the equal protection issue as well. In *Lukkason*, we confirmed that vehicle forfeiture under Minn.Stat. § 169.1217 is rationally related to the statute's remedial purpose of protecting the public from the known danger of intoxicated drivers. 590 N.W.2d at 806 (citing *1986*

*Mazda 626*, 546 N.W.2d at 303–04). Hawes once again argues that, because the seizure will not result in financial gain to the state, it cannot rationally be called remedial. Whether applied to an equal protection challenge or a double jeopardy claim, however, the argument suffers from the same flaw: it ignores that the remedial purpose of a forfeiture is not solely to provide compensation to the state, but also to protect the public from the safety hazard presented by repeat intoxicated drivers.

Because the forfeiture statute is rationally related to the statute's remedial purpose, the district court erred as a matter of law in concluding that the vehicle forfeiture statute violates equal protection, and summary judgment on this basis was inappropriate.

### IV. Denial of Summary Judgment for State

The state argues that because the district court erred in holding the forfeiture constitutionally invalid as a matter of law, and because no disputed issues of material fact exist, the state is entitled to summary judgment in its favor. Once a court determines that the agency seeking forfeiture has met all the statutory requirements, an order for forfeiture is mandatory. *Adkins v.1979 Midas R.V.*, 546 N.W.2d 768, 770 (Minn.App.1996), *review denied* (Minn. July 10, 1996).

Hawes contends that three issues of material fact remain that prevent entry of summary judgment for the state: (1) whether the vehicle seized was the vehicle actually used in the commission of the offense; (2) whether the seizure was pursuant to a lawful arrest; and (3) whether proper notice was given to all persons known to have an ownership or possessory interest in the vehicle.

The record does not support Hawes's contention that any issues of material fact exist about the identity of the vehicle or the legality of the arrest and seizure. At the first and second hearings before the

district court, the state submitted evidence of Hawes's ownership of the vehicle, a state investigator's affidavit confirming the identity of the vehicle, and a certified copy of Hawes's conviction of a designated offense. Hawes has offered nothing to rebut the state's evidence.

Hawes also argues that an issue of material fact exists whether the state provided the proper statutory notice to the secured creditor. The record does not reflect whether the state complied with the technical requirements of Minn.Stat. § 169.1217, subd. 7a(b) and (c), that it serve written notice on all persons known to have an ownership or possessory interest in the vehicle. Nonetheless, it was abundantly clear, both from information in the record and at oral argument, that the state was in direct communication with the secured creditor about the forfeiture well before the district court rendered its decision. We therefore conclude that there is no genuine issue of material fact whether the secured creditor received adequate notice of the forfeiture proceeding.

Under the terms of the statute, a motor vehicle used to commit a designated offense is subject to forfeiture if the driver is convicted of the offense, and the owner knew or should have known of the intended use. Minn.Stat. § 169.1217, subds. 7(a), 7(d), 8(a) (1998). Here, the driver is charged with knowledge of the law, and the consequences that follow for a violation. There are no issues of material fact that the vehicle was owned by Hawes and was used by him in the commission of a designated offense. The statute provides that once a court determines that the vehicle is subject to forfeiture, it "*shall* order the appropriate agency to: (1) sell the vehicle and distribute the proceeds * * * or (2) keep the vehicle for official use." Minn.Stat. § 169.1217, subd. 9(a)(1)-(2) (emphasis added). The use of "shall" means that forfeiture is mandatory. *1979 Midas R.V.*, 546 N.W.2d at 770 (citing Minn.Stat. § 645.44, subd. 16 (1994)).

## DECISION

The district court erred in concluding that the forfeiture violated respondent's constitutional rights. Because no genuine issues of material fact exist, we conclude that this vehicle is subject to forfeiture as a matter of law. We reverse the judgment in favor of respondent, and remand this case to the district court for entry of judgment in favor of the state, and for disposition of the vehicle consistent with Minn. Stat. § 169.1217, subd. 9.

**Reversed and remanded.**

RANDALL, Judge (concurring specially).

I concur in the result. The majority has a well-reasoned opinion setting forth the history of forfeiture, including both federal and state cases. But I agree with the district court that the present system does more than appear arbitrary and capricious and unjust. It produces actual results that are arbitrary, capricious, and unjust.

The district court said in its memorandum, which was incorporated into its order:

> [T]hese open-ended forfeitures constitute cruel and unusual punishment, in violation of a defendant's rights. There is also serious considerations concerning the equal protection laws, because one person who has a motor vehicle worth $40,000 with no indebtedness ends up with a $40,000 fine. On the other hand, a person with a $400 vehicle with encumbrances ends up not paying anything, or next to nothing, for the same offense. There is no logic or reasoning to the statutory system thus enacted.

I agree with the district court. The majority correctly concedes:

> A civil *in rem* forfeiture with dual remedial and punitive purposes may violate the Excessive Fines Clause even if it passes the constitutional test for double jeopardy. *Austin,* 509 U.S. at 621–22, 113 S.Ct. at 2812; *Lukkason,* 590

N.W.2d at 808. Minnesota's vehicle forfeiture statute, although styled as an action against the offending vehicle, has an obvious punitive effect on the vehicle's owner. This aspect brings the forfeiture within the purview of the Eighth Amendment, despite the statute's legitimate, additional remedial purpose of enhancing public safety. *Lukkason,* 590 N.W.2d at 807–08.

But then the majority goes on to conclude that the facts in this case are controlled by *Lukkason* where the owner had a net loss of over $11,500, undeniably more than the net loss appellant will suffer here. *See Lukkason v.1993 Chevrolet Extended Cab Pickup,* 590 N.W.2d 803, 807 n. 3 (Minn. App.1999), *review denied* (Minn. May 18, 1999) (noting Lukkason's claim that truck's net value to him totaled $11,534.92). I cannot dispute the figures in *Lukkason* or in this case, which are matters of public record. Thus, I concur. But the criminal/civil forfeiture system turns a blind eye to the arbitrariness built into the system. A millionaire driving a $2,000 beater loses that vehicle and suffers no monetary consequence. A blue-collar worker who has saved all his life for his first new car could suffer a $20,000 to $40,000 loss for exactly the same offense. We do not do that anyplace else in the criminal justice system.

Misdemeanors have maximum fines in Minnesota. *See* Minn.Stat. § 609.02, subd. 3 (1998) (stating $700 is maximum fine for misdemeanor). Gross misdemeanors in Minnesota have maximum fines. *Id.,* subd. 4 (1998) (stating $3,000 is maximum fine for gross misdemeanor). Felonies in Minnesota have stated maximum fines. *See, e.g.,* Minn.Stat. §§ 609.245, subds. 1, 2 (listing maximum fines for aggravated robbery: $35,000 for first-degree, $30,000 for second-degree), 609.582, subds. 1, 2, 3 (1998) (listing maximum fines for felony burglary: $35,000 for first-degree, $20,000 for second-degree, $10,000 for third-degree).

These stated amounts are applied uniformly against defendants within the boundaries of a district court's discretion to assess all of it, or part of it. On the other hand, with forfeiture cases, whether snowmobiles, boats, motor vehicles, buildings, etc., the amount, as the district court pointed out in its memorandum, varies wildly from one person to the next for the same offenses. The amount of the forfeiture and its economic effect on the offender are not known *until after the fact.* With all other criminal/civil statutes that prescribe stated fines, the citizen knows beforehand the maximum penalties for a particular act; fair notice to people of the consequence of their act is an essential element of due process. The forfeiture statute at issue lacks that element of due process.