Fred MORGAN, Jr., Appellant,

v.

**2000 VOLKSWAGEN, LICENSE NO. 279, VIN # 3VWRA29M2YM125643, Respondent.**

No. A07–1922.

Court of Appeals of Minnesota.

Aug. 12, 2008.

Frank Bibeau, Christopher Allery, Anishinabe Legal Services, Cass Lake, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN, and Julie Bruggeman, Mahnomen County Attorney, Mahnomen, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; SHUMAKER, Judge; and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

Appellant, an enrolled member of an Indian tribe, challenges forfeiture of his vehicle, asserting that the State of Minnesota does not have jurisdiction to enforce its vehicle-forfeiture statute against the vehicle he used in committing a designated offense on his tribe's reservation.

## FACTS

Appellant Fred Morgan, Jr., an enrolled member of the Minnesota Chippewa Tribe, was charged with a "designated offense,"[1] triggering forfeiture of respondent 2000 Volkswagen, License No. 279, VIN

---

1. Morgan was charged with one count of third-degree driving while impaired (Minn. Stat. §§ 169A.20, subd. 1(1), .26, subd. 1 (2006)), and one count of second-degree refusal to submit to chemical test (Minn.Stat. §§ 169A.20, subd. 2, .25, subd. 1(b) (2006)). Section 169A.25 is included in the definition of a "designated offense" under Minn.Stat. § 169A.63, subd. 1(e)(1) (2006).

# 3VWRA29M2YM125643, owned by Morgan and used in the commission of the offense. The designated offense was committed in Mahnomen County, which is wholly within the boundaries of the White Earth Reservation of the Minnesota Chippewa Tribe.

Morgan timely demanded judicial determination of the vehicle forfeiture under Minn.Stat. § 169A.63, subd. 8(d) (2006), asserting that the forfeiture action should be dismissed because Minnesota lacks jurisdiction to enforce the vehicle-forfeiture statute when the incident triggering forfeiture involves conduct that occurred on an Indian reservation and the owner of the vehicle is an Indian.[2] The district court denied Morgan's motion to dismiss, concluding that, for the purpose of jurisdiction to enforce a statute on an Indian reservation, the vehicle-forfeiture statute is a criminal law,[3] and state jurisdiction exists under federal law granting Minnesota broad criminal jurisdiction over specified areas of Indian country, including the White Earth Reservation. This appeal followed.

## ISSUE

Does the state have jurisdiction to enforce its civil vehicle-forfeiture law against a vehicle owned by an enrolled member of an Indian tribe when the conduct giving rise to forfeiture occurred on the owner's reservation?

2. Morgan seeks prohibition of enforcement of the vehicle-forfeiture statute against any Indian-owned vehicle for conduct that occurred on any reservation. We limit this decision to the facts presented: enforcement of the law against an Indian-owned vehicle for conduct committed on the owner's reservation.

3. In response to Morgan's argument that if the vehicle-forfeiture statute is a criminal law, enforcement of the forfeiture statute together with prosecution for the designated offense violates the Double Jeopardy Clause of the United States Constitution, the district court

## ANALYSIS

### I. Public Law 280 jurisdiction

 Issues of jurisdiction are reviewed de novo. *State v. R.M.H.*, 617 N.W.2d 55, 58 (Minn.2000). Federal statutes and caselaw govern a state's jurisdiction over Indians. *Id.* Congress granted Minnesota broad criminal and limited civil jurisdiction over specified Indian country within the state.[4] Act of Aug. 15 1953, Pub.L. No. 83–280, §§ 1162, 1360, 67 Stat. 588–90 (1953) (codified as amended at 18 U.S.C. § 1162 (2000), 28 U.S.C. § 1360 (2000)).

 In *State v. Stone*, 572 N.W.2d 725, 728 (Minn.1997), the supreme court adopted the analytical framework approved by the United States Supreme Court in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987), for determining whether Minnesota has jurisdiction under Public Law 280 to enforce a state law in Indian country. *Cabazon* instructs that

> when a State seeks to enforce a law within an Indian reservation under the authority of Pub.L. 280, it must be determined whether the law is criminal in nature, and thus fully applicable to the reservation ... or civil in nature, and applicable only as it may be relevant to

reasoned that for double-jeopardy analysis, the forfeiture statute is remedial and rationally related to the state's purpose of removing such offenders from the road.

4. The grant of jurisdiction excluded the Red Lake Reservation. § 1162, 67 Stat. at 588. And in 1973, the state retroceded all criminal jurisdiction over the Bois Forte Reservation back to the federal government under the authority of 25 U.S.C. § 1323. 1973 Minn. Laws ch. 625, § 3, at 1501.

private civil litigation in state court.[5] 480 U.S. at 208, 107 S.Ct. at 1088. In making this determination, laws are classified as state "criminal/prohibitory" laws or state "civil/regulatory" laws:

> [I]f the intent of a state law is generally to prohibit certain conduct, [it is criminal/prohibitory and] it falls within Pub. L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.

*Id.* at 209, 107 S.Ct. at 1088. But there is no bright-line distinction between the classifications, and "[t]he applicable state laws governing an activity must be examined in detail before they can be characterized as regulatory or prohibitory." *Id.* at 211 n. 10, 107 S.Ct. at 1089 n. 10.

To determine whether the vehicle-forfeiture statute is "criminal/prohibitory" or "civil/regulatory," we begin with an examination of relevant parts of the statute and existing caselaw involving the statute. The statute provides that "[a] motor vehicle is subject to forfeiture under this section if it was used in the commission of a designated offense or was used in conduct resulting in a designated license revocation." Minn.Stat. § 169A.63, subd. 6(a) (2006).[6] "An action for forfeiture is a civil in rem action and is independent of any criminal prosecution. All proceedings are governed by the Rules of Civil Procedure." Minn.Stat. § 169A.63, subd. 9(a) (2006).

This court has rejected the classification of the vehicle-forfeiture statute as "punishment" for double-jeopardy purposes. *Hawes v. 1997 Jeep Wrangler,* 602 N.W.2d 874, 878 (Minn.App.1999) (noting that the legislature designed the vehicle-forfeiture statute as a civil proceeding to serve the nonpunitive remedial goal of enhancing public safety and stating that there was no support in the record for a conclusion that a "forfeiture proceeding is so punitive that it can only be characterized as criminal").

Morgan submitted numerous district court decisions to the district court demonstrating that district courts have frequently relied on *Hawes* to conclude that the vehicle-forfeiture statute must be classified as "civil/regulatory" in the context of a Public Law 280 analysis. In this case, however, the district court held that for purposes of determining jurisdiction, the statute is "criminal/prohibitory and not civil/regulatory" because "[t]he intent of this law is to prohibit certain conduct and not to regulate permitted conduct." The district court distinguished the jurisdictional analysis from the double-jeopardy analysis undertaken in *Hawes,* finding that, consistent with double-jeopardy caselaw, the statute is, for double-jeopardy purposes, a civil-remedial sanction that does not violate the Minnesota and United States Double Jeopardy Clauses.

The Minnesota Supreme Court used a similar approach in determining whether Minn.Stat. § 243.166 (2002), which requires registration by persons who have been convicted or adjudicated delinquent of designated crimes, could be enforced against an Indian on his reservation. *State v. Jones,* 729 N.W.2d 1, 3 (Minn. 2007). The supreme court had previously

---

5. No argument has been advanced in this case that the state has jurisdiction under Pub. L. 280's limited grant of jurisdiction to enforce state civil laws on Indian reservations.

6. The vehicle-forfeiture statute was recodified in 2000 from section 169.1217 to section 169A.63. 2000 Minn. Laws ch. 478, art. 1, § 37, at 1519–24.

classified the registration statute as "remedial" rather than "punitive" under a double-jeopardy analysis. *Id.* at 9 (citing *Boutin v. LaFleur*, 591 N.W.2d 711, 717 (Minn.1999), and *Kaiser v. State*, 641 N.W.2d 900, 907 (Minn.2002)). But in *Jones*, the supreme court, without overruling *Boutin* and *Kaiser*, noted that neither of those cases determined how the statute should be classified under *Cabazon*. *Id.* The supreme court explained that *Boutin* and *Kaiser* were distinguishable:

> We acknowledge that our use in *Boutin* and *Kaiser* of the terms "punitive"— which we used interchangeably with "criminal"—and "civil, regulatory" could cause confusion in our analysis under the *Cabazon/Stone* test, which distinguishes conduct that is "criminal/prohibitory" from that which is "civil/regulatory." But "punitive" is not the same as "prohibitory," and the definition of "regulatory" under the [ ] analysis of *Boutin* and *Kaiser* does not have the same meaning as "regulatory" employed by Pub. L. 280 and *Cabazon*. . . . Therefore, for all the foregoing reasons, we conclude that *Boutin* and *Kaiser* are distinguishable and do not require us to conclude that [the registration statute] is civil/regulatory in nature under the *Cabazon/Stone* test.

*Id.* at 11.

Because *Hawes* did not address the classification of the vehicle-forfeiture statute under the *Cabazon/Stone* test, we conclude that, consistent with the supreme court's reasoning in *Jones*, the holding in *Hawes* does not answer the question of whether the statute is criminal/prohibitory or civil/regulatory in the context of a jurisdiction analysis under Public Law 280. And designation of the statute as "criminal/prohibitory" for the jurisdiction analysis does not make the statute "punitive" for double-jeopardy purposes, as Morgan argues.

We return then, to a determination of the proper classification of the vehicle-forfeiture statute under the *Cabazon/Stone* analysis.

■■ The first step in determining the classification of a statute under *Cabazon/Stone* is to identify the conduct at issue. *Stone*, 572 N.W.2d at 730. The supreme court in *Stone* noted some ambiguity in the shorthand test described in *Cabazon* because "[t]he Supreme Court did not clearly state whether the 'conduct at issue' to be analyzed is the broad conduct . . . or the narrow conduct," a distinction that the supreme court found "crucial when the broad conduct is generally permitted but the narrow conduct is generally prohibited, or vice versa." *Id.* at 729. "The broad conduct will be the focus of the test *unless* the narrow conduct presents substantially different or heightened public policy concerns. If this is the case, the narrow conduct must be analyzed apart from the broad conduct." *Id.* at 730.

■ We conclude that the broad conduct at issue in this case is owning a vehicle that is operated on public highways, and the narrow conduct is owning such a vehicle when it is used in the commission of a designated offense under the vehicle-forfeiture statute or to engage in conduct that results in a designated license revocation. *See* Minn.Stat. § 169A.63, subd. 6(a). Having identified the broad and narrow conduct at issue, we must determine whether the narrow conduct "presents substantially different or heightened public policy concerns" than the broad conduct.

In *State v. Busse*, the supreme court examined the statute that prohibits driving after cancellation as inimical to public safety and identified the broad conduct involved as "driving" and the narrow conduct as "driving after cancellation as inimical to public safety." 644 N.W.2d 79, 83

(Minn.2002). The supreme court determined, based on the criminal sanctions imposed by the statute and because the statute targeted those who exhibit a "pattern of behavior [that] signals both a significant alcohol or drug problem and a defiance of the laws of our state, and thus, a significant risk to public safety," that the narrow conduct involved heightened public-policy concerns. *Id.* at 86–87.

In *Stone,* which involved jurisdiction to enforce various non-DWI-related traffic offenses, the supreme court identified the broad conduct at issue as driving and the narrow conduct as driving without a valid license or proof of insurance, driving without a seatbelt, or driving in excess of the speed limit. 572 N.W.2d at 730. The supreme court concluded that the narrow conduct related to the general public policy of promoting safety on roadways and did not involve heightened public policy. *Id.* at 730–31. *Stone* states that the public policy underlying laws aimed at driving while impaired "is substantially heightened in comparison to the general scheme of driving laws, in that their violation creates a greater risk of direct injury to persons and property on the roadways." *Id.* at 731.

The designated offenses and license revocations that trigger vehicle forfeiture all relate to driving while impaired, suggesting heightened public-policy concerns. However, the narrow focus of the vehicle-forfeiture statute is not on driving conduct, but rather the ownership of the involved vehicle. Owners of vehicles are subject to numerous regulations. Owners of vehicles operated on public highways are required to register, Minn.Stat. § 168.09, subd. 1 (2006); insure, Minn.Stat. § 65B.48, subd. 1 (2006); maintain and operate in a safe condition, Minn.Stat. § 169.47, subd. 1 (2006); and appropriately dispose of such vehicles, Minn.Stat. § 168B.03 (2006). In

order to avoid forfeiture, the vehicle-forfeiture statute requires that a vehicle owner not have any "actual or constructive knowledge that the vehicle [will] be used or operated in any manner contrary to law," or show that "the owner took reasonable steps to prevent use of the vehicle by the offender." Minn.Stat. § 169A.63, subd. 7(d) (2006). As with the laws involved in *Stone,* all of these laws, including the vehicle-forfeiture law, appear to be closely related to the general public policy of promoting safety on the roadways. Therefore, we conclude that the narrow conduct involved in the vehicle-forfeiture law does not need to be analyzed apart from the broad conduct.

■ "After identifying the focus of the *Cabazon* test, the second step is to apply it. If the conduct is generally permitted, subject to exceptions, then the law controlling the conduct is civil/regulatory." *Stone,* 572 N.W.2d at 730. Plainly, the ownership of vehicles is generally permitted conduct, subject to regulation, leading us to conclude that the vehicle-forfeiture statute is a civil/regulatory statute, and the state does not have authority under Public Law 280 to enforce it against Indian-owned vehicles for conduct occurring on the owner's reservation.

■ We further conclude, however, that even if we were to analyze the narrow conduct apart from the broad conduct, under the "shorthand test" for distinguishing civil/regulatory statutes from criminal/prohibitory statutes, we would reach the same conclusion: that the statute is civil/regulatory. *Stone* instructs that in close cases, *Cabazon's* "shorthand public policy test," which provides that conduct is criminal if it violates the state's public policy, aids in the distinction. 572 N.W.2d at 730.

■ Because all laws implicate some public policy, "in light of the purpose of

Public Law 280 to combat lawlessness, [the supreme court] interprets public policy, as used in the *Cabazon* test, to mean public *criminal* policy." *Id.* "Public criminal policy goes beyond merely promoting the public welfare. It seeks to protect society from serious breaches in the social fabric which threaten grave harm to persons or property." *Id.* In *Stone,* the supreme court listed four factors useful in determining whether an activity violates state public policy in a manner serious enough to be considered criminal:

> (1) the extent to which the activity directly threatens physical harm to persons or property or invades the rights of others; (2) the extent to which the law allows for exceptions and exemptions; (3) the blameworthiness of the actor; (4) the nature and severity of the potential penalties for a violation of the law. This list is not meant to be exhaustive, and no single factor is dispositive.

*Id.* We turn, then, to the application of these factors in the case at hand.

### a. The extent to which the activity directly threatens physical harm to others or property

Because the narrow conduct involves ownership of a vehicle used by an impaired driver, it can be said to involve a direct threat of physical harm to others or property, and this factor would weigh in favor of holding that the vehicle-forfeiture law is criminal/prohibitive.

### b. The extent to which the law allows for exceptions and exemptions

The vehicle-forfeiture law is not mandatory or automatic; a vehicle is only *subject* to forfeiture. And the law contains exceptions: it does not apply to a vehicle when the owner did not know of a driver's intended unlawful use or when an owner, secured party, or lessor of the vehicle took steps to terminate the unlawful use. Minn.Stat. § 169A.63, subd. 7(c), (d). Additionally, the law does not prohibit the owner from owning other vehicles. We conclude that this factor weighs in favor of holding that the statute is civil/regulatory.

### c. The blameworthiness of the actor

The owner of a vehicle subject to forfeiture need not be the person who commits the conduct on which forfeiture is based. And forfeiture is presumed under the statute for conduct such as failing to appear for a scheduled court appearance and failing to seek timely judicial review of a license revocation as well as for conviction of the designated offense on which the forfeiture is based. Minn.Stat. § 169A.63, subd. 7(a)(1)-(3). Because the owner of a vehicle that is subject to forfeiture may be relatively blameless, we conclude that this factor weighs in favor of a determination that the statute is civil/regulatory.

### d. The nature and severity of the potential penalties for a violation of the law

The nature of the penalty is fixed: forfeiture of the vehicle. There are no criminal penalties involved. The severity of forfeiture appears to depend on the financial circumstances of the person or persons affected by the forfeiture. We conclude that this factor weighs in favor of a determination that the statute is civil/regulatory.

Therefore, under the "shorthand public policy test," we conclude that, even if the focus is on the "narrow conduct," the vehicle-forfeiture statute is properly classified as civil/regulatory, and Public Law 280 does not expressly grant the state jurisdiction to enforce the statute against an Indian-owned vehicle for conduct committed on the owner's reservation.

## II. Jurisdiction under exceptional circumstances

Absent an express congressional grant of jurisdiction, Minnesota can nonetheless exercise jurisdiction over "on-reservation activities by tribal members" if "exceptional circumstances" exist and federal law does not preempt state jurisdiction. *Jones*, 729 N.W.2d at 12 (Anderson, J. concurring) (citing *Cabazon*, 480 U.S. at 215, 107 S.Ct. at 1083); *R.M.H.*, 617 N.W.2d at 60 (noting that "a state may exercise jurisdiction on a tribal reservation absent express federal consent if the operation of federal law does not preempt it from doing so"). "Cases presenting 'exceptional circumstances,' such that the Supreme Court has approved the exercise of state jurisdiction over the activities of member Indians on reservations without an express federal grant of authority, have primarily involved an indirect purpose to regulate non-Indians." *Stone*, 572 N.W.2d at 731 (citing *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 159, 100 S.Ct. 2069, 2084, 65 L.Ed.2d 10 (1980) (holding that a state could require reservation "smoke shops" to collect state sales tax from non-Indian customers); *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 483, 96 S.Ct. 1634, 1646, 48 L.Ed.2d 96 (1976) (same)).

This court recently held that, based on "strong state interests" and absent a threat to "the federal interest in preserving tribal self-government," the state has jurisdiction to civilly commit a member of the Red Lake Band of Chippewa Indians as a sexually dangerous person.[7] *In re Commitment of Beaulieu*, 737 N.W.2d 231, 241 (Minn.App.2007). But in *Stone*, the supreme court found that the state had not established extraordinary circumstances permitting enforcement of statutes regulating driving conduct against Indians on their reservations because the state had failed to show circumstances sufficient to "overcome the right of reservation Indians to make their own laws and be ruled by them." 572 N.W.2d at 732.

In this case, the state has not filed an appellate brief or otherwise asserted that jurisdiction exists under "exceptional circumstances." We conclude that any argument for jurisdiction on this basis is waived and need not be addressed.

## DECISION

Because the vehicle-forfeiture law, Minn. Stat. § 169A.63, is a civil/regulatory law, the state lacks jurisdiction under Public Law 280 to enforce the statute against Indian owners of vehicles for conduct that occurs on the owner's reservation. Because the state has failed to show any other basis for asserting jurisdiction to enforce the vehicle-forfeiture law in these circumstances, the district court erred in denying Morgan's motion to dismiss the forfeiture proceeding against his vehicle.

**Reversed.**

---

7. Under Public Law 280, the Red Lake Band reservation is excluded from the grant of state jurisdiction. *See* 18 U.S.C. § 1162(a) (2000). At the time *Beaulieu* was decided, the tribe did not have laws addressing commitment of sexually dangerous persons. *Beaulieu*, 737 N.W.2d at 239.