**In the Matter of the Civil COMMITMENT OF John Louis BEAULIEU, III.**

No. A07–496.

Court of Appeals of Minnesota.

Aug. 14, 2007.

Lori Swanson, Attorney General, Angela Helseth Kiese, Sean McCarthy, Assistant Attorneys General, St. Paul, MN; and Timothy Faver, Beltrami County Attorney, Bemidji, MN, for appellant, State of Minnesota.

Margaret Joanne Dow, Bemidji, MN, for respondent, John Beaulieu.

Considered and decided by DIETZEN, Presiding Judge; TOUSSAINT, Chief Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

The State of Minnesota argues that the district court erred when it determined that it lacks both personal and subject-matter jurisdiction to civilly commit respondent, an enrolled member of the Red Lake Band of Chippewa Indians, as a sexually dangerous person under Minn.Stat. § 253B.02, subd. 18(c) (2004). Because (1) there is an adequate connection between respondent and the state, (2) respondent received notice of the action, and (3) respondent was afforded an opportunity to be heard, we conclude that the state has personal jurisdiction over respondent. Furthermore, because the operation of federal law does not preempt the state from exercising its authority to civilly commit members of the Red Lake Band, we conclude that the state has subject-matter jurisdiction over respondent's commitment. We therefore reverse and remand.

## FACTS

In 1999, respondent John Louis Beaulieu, III, who was born in November 1984 and is an enrolled member of the Red Lake Band of Chippewa Indians, was adjudicated delinquent in federal court of aggravated sexual abuse of a child pursuant to the Indian Major Crimes Act. Respondent subsequently spent nearly two years at the Adolescent Sexual Adjustment Program (ASAP) in Huron, South Dakota. After being discharged from ASAP, respondent was admitted to the Leo Hoffman Center in St. Peter, Minnesota, where he resided from May 2002 through November 2003. During his stay there, respondent orally threatened two female staff members and, as a result, was charged with and eventually pleaded guilty to terroristic threats. Respondent also had sexual contact with other adolescents at both ASAP and the Leo Hoffman Center.

In August 2003, while still on federal probation, respondent filed an application with Beltrami County Human Services, seeking case-management and residential- and day-programming assistance pending his release from federal supervision. In November 2003, respondent was granted conditional release and was placed by Beltrami County Human Services in the REM–Lyndale Group Home (REM–Lyndale). Respondent also received supportive therapeutic services through Safety Center, Inc. But respondent was discharged from REM–Lyndale in May 2004 after he repeatedly acted out sexually. Respondent's conditional release was thereafter revoked by the federal court as a result of respondent's failure to comply with his treatment requirements at REM–Lyndale, and respondent was subsequently placed in the Lake Regions Law Enforcement Center in Devils Lake, North Dakota, until he reached the age of 21 and federal supervision terminated.

On November 3, 2004, Beltrami County petitioned to civilly commit respondent as a sexually dangerous person (SDP) and/or a sexual psychopathic personality (SPP) pursuant to the Minnesota Commitment and Treatment Act. Respondent was transferred to the Beltrami County jail pending his initial commitment hearing on March 2, 2005. On March 15, 2005, the district court found by clear-and-convincing evidence that, based on the testimony of James Gilbertson, Ph.D., the court-appointed examiner, and James Alsdurf, Ph. D., respondent's requested examiner, respondent is an SDP under Minn.Stat.

§ 253B.02, subd. 18(c) (2004). The district court ordered that respondent be initially committed to the Minnesota Sex Offender Program for a period not to exceed 60 days. After conducting a review hearing, the district court found by clear-and-convincing evidence that respondent continues to be an SDP, and thus the district court ordered that respondent be indeterminately committed.

On October 23, 2006, respondent filed a pro se petition for relief from the judgment pursuant to Minn. R. Civ. P. 60.02, seeking, in part, to void the commitment order on the grounds that the district court lacks both personal and subject-matter jurisdiction to commit him. The district court granted respondent's motion, concluding that the state lacks jurisdiction to commit respondent and that both the initial and indeterminate commitment orders were therefore "void *ab initio* " under rule 60.02(d). Upon the state's motion, the district court stayed its order for a period not to exceed 30 days to allow the state time to perfect an appeal and to seek a further stay from this court.

This appeal follows.

## ISSUES

1. Does the state have personal jurisdiction over respondent, an enrolled member of the Red Lake Band of Chippewa Indians, for the purposes of commitment proceedings?

2. Does the state have subject-matter jurisdiction to determine whether respondent should be committed as a sexually dangerous person?

## ANALYSIS

■ The existence of personal and subject-matter jurisdiction are questions of law, which this court reviews de novo. *In re Ivey*, 687 N.W.2d 666, 669 (Minn.App.

2004) (citing *Wick v. Wick*, 670 N.W.2d 599, 603 (Minn.App.2003), and *In re Thulin*, 660 N.W.2d 140, 143 (Minn.App.2003)), *review denied* (Minn. Dec. 22, 2004).

## I.

■ The state challenges the district court's determination that the state lacks personal jurisdiction to civilly commit respondent as an SDP, arguing that it has personal jurisdiction over respondent because there is an adequate connection between respondent and the state and because respondent received notice of the action and was afforded an opportunity to be heard.

Personal jurisdiction has two requirements: (1) an adequate connection between the state and the party over whom jurisdiction is sought, or a basis for the exercise of jurisdiction; and (2) a form of process that satisfies the requirements of both due process and the Minnesota Rules of Civil Procedure governing the commencement of civil actions.

*Ivey*, 687 N.W.2d at 670. If a judgment is void for want of personal jurisdiction, it must be vacated under Minn. R. Civ. P. 60.02(d). Id.

■ Accordingly, we must first examine whether there is an adequate connection between respondent and the state. In addressing this issue, the district court cited this court's decisions in *Ivey* and *In re Civil Commitment of Kittrell*, No. A05–2370, 2006 WL 1390579 (Minn.App. May 23, 2006), an unpublished decision.

In *Ivey*, this court held that there was an adequate connection between the state and the appellant, and therefore personal jurisdiction over appellant for civil-commitment purposes, when, despite the fact that appellant was imprisoned in Germany, the commissioner of corrections maintained supervisory power over appellant while he

was serving the ten-year conditional-release portion of his sentence. 687 N.W.2d at 668, 671. We reasoned that the requirements of personal jurisdiction were satisfied because appellant's

> last residence before incarceration was in the state, his crimes and incarceration occurred in the state, and he was subject to DOC's continuing supervisory authority, under an apparently valid sentencing order, at the time he returned to the state. Further, he was afforded due process and an opportunity to be heard on a commitment petition that was properly commenced according to the rules and statutes governing commencement of these actions.

*Id.* at 671.

In *Kittrell,* the appellant, a resident of the state of Michigan who was in Minnesota on business, was arrested for assaulting two women. 2006 WL 1390579, at *1. After pleading guilty to two counts of second-degree assault, appellant was sentenced to 84 months in prison and 42 months of supervised release. Id. Because the record indicated that appellant had sexually assaulted women in California, Arizona, and Michigan, the district court concluded that appellant was a patterned sex offender and, consequently, sentenced appellant under the Minnesota Patterned Sex Offender Statute. Id. (applying Minn. Stat. § 609.108 (1998)).

Prior to the appellant's release from prison, the Minnesota Attorney General's office filed a petition for civil commitment, alleging that the appellant was an SDP and an SPP. Id. at *2. The district court found that the appellant was both an SDP and an SPP and ordered that the appellant be indeterminately committed. Id. Appellant appealed, arguing that because he was not a Minnesota resident and because he had not committed sex crimes in Minnesota, the state did not have personal jurisdic-

tion over him for the purpose of committing him as an SDP or SPP. Id. But this court, citing *Ivey,* held that because the appellant was in the legal custody of the commissioner of corrections when the petition to commit him was filed, the district court had personal jurisdiction over him. *Id.*

Here, the district court concluded that both *Ivey* and *Kittrell* are distinguishable, stating:

> Respondent was not incarcerated or under the supervision of the Minnesota Department of Corrections prior to his commitment. Rather, Respondent remained in federal custody until the Beltrami County Attorney's Office initiated a civil commitment proceeding. As a result, Respondent never formed an adequate connection with Minnesota by way of incarceration or supervision by the Minnesota Department of Corrections.

Accordingly, the district court concluded that the state did not establish "adequate connection" with respondent and, therefore, it did not have personal jurisdiction over him. We disagree.

The record indicates that in August 2003, respondent sought residential- and day-programming assistance from Beltrami County Human Services pending his release from federal jurisdiction. The record further shows that respondent was subsequently granted conditional release and placed by Beltrami County Human Services in REM–Lyndale. In addition, respondent received supportive therapeutic services from Safety Center, Inc. While at REM–Lyndale, respondent repeatedly acted out sexually and was therefore discharged and had his conditional release revoked.

We conclude that Beltrami County's placement of respondent at REM–Lyndale along with the additional services he re-

ceived from Safety Center constitute an adequate connection with the state for purposes of personal jurisdiction, despite the fact that respondent was under federal supervision at the time. As the state notes, *Ivey* does not expressly limit personal jurisdiction in commitment cases to situations where a defendant is under state supervision. In fact, *Ivey* cites cases from other jurisdictions where " 'the power of a court to try a person for [a] crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a forcible abduction.' " 687 N.W.2d at 670 (quoting *Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952)); *see also State v. Greenleaf,* 591 N.W.2d 488, 497 (Minn.1999) (stating that "even an illegal arrest in violation of an extradition treaty does not preclude criminal prosecution"); *State v. Monje,* 109 Wis.2d 138, 325 N.W.2d 695, 700 (1982) (concluding that an illegal execution of a valid warrant did not deprive court of personal jurisdiction over defendant). Furthermore, there is no dispute that the process used by the district court was consistent with due-process requirements and the Minnesota Rules of Civil Procedure, the petition for civil commitment was properly filed, respondent received proper notice, and respondent had an adequate opportunity to be heard. Accordingly, we conclude that the district court erred when it granted respondent's motion to void the commitment order after determining that the state lacks personal jurisdiction.

## II.

■ The state also argues that it has subject-matter jurisdiction over respondent. Subject-matter jurisdiction is defined as a court's authority to hear and determine either a particular class of actions or questions the court assumes to decide. *Irwin v. Goodno,* 686 N.W.2d 878,

880 (Minn.App.2004). "Because subject-matter jurisdiction goes to the authority of the court to hear a particular class of actions, lack of subject-matter jurisdiction may be raised at any time." Id. (quotation omitted).

■ "State court jurisdiction over matters involving Indians is governed by federal statute or case law." *State v. Stone,* 572 N.W.2d 725, 728 (Minn.1997). The United States Supreme Court "has consistently recognized that Indian tribes retain 'attributes of sovereignty over both their members and their territory.' " *Id.* (quoting *Cal. v. Cabazon Band of Mission Indians,* 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987)). "This sovereignty is 'dependent on, and subordinate to, only the Federal Government, not the States.' " *Id.* (quoting *Cabazon,* 480 U.S. at 207, 107 S.Ct. at 1087).

■ As a general rule, state courts have subject-matter jurisdiction over civil commitments. *See State ex rel. Anderson v. U.S. Veterans Hosp.,* 268 Minn. 213, 218, 128 N.W.2d 710, 715 (1964) (stating that "[t]he fact that the probate court has jurisdiction over commitment proceedings by virtue of our constitution has long been established" (footnote omitted)); *Ivey,* 687 N.W.2d at 669 (stating that "[t]he district court has subject matter jurisdiction over judicial commitments, including commitments of a person as a sexual psychopathic personality or as a sexually dangerous person"). But "[i]t has long been established that the Red Lake Band of Chippewa Indians at the Red Lake Reservation has a special status among Indians of this state." *State by Minn. State Ethical Practices Bd. v. Red Lake DFL Comm.,* 303 N.W.2d 54, 55 (Minn.1981). Because "the federal government has never transferred its exclusive and unlimited jurisdiction over the Red Lake Band to the State of Minneso-

ta[,] ... the Band enjoys unique self-government." *Id.*

In *State v. R.M.H.*, 617 N.W.2d 55, 58 (Minn.2000), the Minnesota Supreme Court addressed the issue of whether the state has subject-matter jurisdiction over tribal Indians in Indian country, stating that under the analytical framework set forth by the United States Supreme Court, "state law does not generally apply to tribal Indians on their reservation absent express consent from Congress. However, even absent such express consent, a state may exercise its authority if the operation of federal law does not preempt it from doing so." (Citations omitted.) *See also Stone*, 572 N.W.2d at 731 (stating that "[t]he Supreme Court has not established a per se rule prohibiting the exercise of state jurisdiction ... in the absence of an express congressional grant of jurisdiction").

Accordingly, we first look to whether Congress has expressly consented to state jurisdiction over commitment proceedings brought against members of the Red Lake Band. In 1953, Congress enacted 18 U.S.C. § 1162 (2000), otherwise known as Public Law 280, which grants Minnesota jurisdiction over offenses committed either by or against Indians on a reservation. Specifically, section 1162(a) states that Minnesota "shall have jurisdiction over offenses committed by or against Indians ... to the same extent that [the state] has jurisdiction over offenses committed elsewhere within the [s]tate." But section 1162(a) expressly excludes the Red Lake reservation, and thus Public Law 280 does not provide Minnesota with jurisdictional authority to enforce its laws on the reservation. Id.; *see also State v. Jones*, 729 N.W.2d 1, 4 (Minn.2007) (stating that "[u]nder Public Law 280, Minnesota has broad criminal and limited civil jurisdiction over all 'Indian country' within the state,

except for the Red Lake Reservation ...."). In addition, Congress has not otherwise expressly provided Minnesota with jurisdiction to civilly commit members of the Red Lake Band.

Therefore, we examine whether the operation of federal law preempts state jurisdiction over commitment proceedings brought against members of the Red Lake Band. *See Cabazon*, 480 U.S. at 215, 107 S.Ct. at 1091 (stating that "[u]nder certain circumstances a State may validly assert authority over the activities of nonmembers on a reservation, and ... in exceptional circumstances a State may assert jurisdiction over the on-reservation activities of tribal members" (second alteration in original) (quotation omitted)); *Jones*, 729 N.W.2d at 12 (Anderson, G. Barry, J., concurring) (stating that "[w]hen Pub[lic] L[aw] 280 does not expressly authorize state jurisdiction, we ask whether federal law preempts state jurisdiction"); *R.M.H.*, 617 N.W.2d at 60 (noting that "a state may exercise jurisdiction on a tribal reservation absent express federal consent if the operation of federal law does not preempt it from doing so").

" 'State jurisdiction is preempted ... if it interferes or is incompatible with federal and tribal interest reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority.' " *R.M.H.*, 617 N.W.2d at 60 (quoting *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334, 103 S.Ct. 2378, 2386, 76 L.Ed.2d 611 (1983)). "The inquiry is to proceed in light of traditional notions of Indian sovereignty and the congressional goal of Indian self-government, including its 'overriding goal' of encouraging tribal self-sufficiency and economic development." *Cabazon*, 480 U.S. at 216, 107 S.Ct. at 1092; *see also R.M.H.*, 617 N.W.2d at 64 (stating that "the goals of tribal self-government, self-

sufficiency, and economic development are overriding goals," and they "reflect an interest in protecting a tribe's retained sovereignty over its members and its territory" (citations omitted). Moreover, "state law may be preempted if it relates to an area that is so pervasively regulated by the federal government that state regulation would obstruct federal policies." *R.M.H.*, 617 N.W.2d at 64.

> [O]ur inquiry into whether federal law preempts state law is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but [calls] for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in [this] specific context, the exercise of state authority would violate federal law.... Further, in this area of the law, a preemption analysis rests principally on a consideration of the nature of the competing interests at stake and rejects a narrow focus on congressional intent to preempt state law as the sole touchstone.

*Id.* (alterations in original) (quotations and citations omitted).

■■■ We first consider whether state jurisdiction over respondent threatens the federal interest in encouraging Indian self-government. *See id.* The district court noted that the Red Lake Band of Chippewa Indians Tribal Code, chapter 901, provides for guardianship proceedings for incapacitated persons, and Minn.Stat. § 253B.212, subd. 1 (2006), authorizes the Minnesota Commissioner of Human Services to contract with Indian Health Service to provide care and treatment for committed tribal members, thereby evidencing the band's "ability to civilly commit its members." Thus, the district court concluded that

> [a]lthough the Tribal Code does not currently provide for the civil commitment

of sexually dangerous persons and/or sexual psychopathic personalities, the lack of such a law does not mean that Minnesota therefore has the right or power to exercise jurisdiction. The Red Lake Band has the ability to enact such legislation if it concludes that the safety of the tribal community necessitates a commitment procedure for dangerous sex offenders. The assumption of jurisdiction by Minnesota solely because the Tribe has chosen not to enact such a law disregards all the above principles relating to the autonomy of the Red Lake Reservation. And so, even though Minnesota *clearly* has a compelling interest to protect its citizens from sexually dangerous offenders like Respondent, exercising jurisdiction in a civil commitment proceeding over a Red Lake tribal member for sexual offenses occurring on the Reservation would "undermine the effectiveness of the band's efforts" to self-govern.

But as the state notes, "the Red Lake [B]and has no tradition of sovereignty in this area" and "has never exercised any authority to commit sexually dangerous persons." While the Red Lake Commitment Code addresses civil commitment for individuals who are chemically dependent, mentally ill, and mentally retarded, the code does not provide for the commitment of sexually dangerous persons. In addition, section 253B.212, subdivision 1, expressly provides that the commissioner of human services may contract with and receive payment from the Indian Health Service for the care and treatment of Red Lake members "who have been committed by tribal court order to the Indian Health Service for care and treatment of *mental illness, developmental disability, or chemical dependency*," but does not provide for the commitment of sexually dangerous persons. (Emphasis added.)

Accordingly, Red Lake does not have a civil-commitment law that allows for the commitment of sexually dangerous persons and does not operate an inpatient sex-offender treatment facility to house and rehabilitate such individuals. As a result, we conclude that the exercise of state jurisdiction over respondent's commitment is justified by the nature of the competing interests at stake. *Anderson v. Beaulieu,* 555 N.W.2d 537, 539 (Minn.App.1996) (quotation omitted); *see also Jones,* 729 N.W.2d at 2, 15 (Anderson, J., concurring) (concluding that state had subject-matter jurisdiction to enforce against member of the Leech Lake Band of Ojibwe who resided on the reservation a statute requiring a person who is convicted of predatory offenses to register current address because "the state's interest in tracking convicted kidnappers is so high, and the threat to tribal sovereignty so low, as to constitute an exceptional circumstance").

▮ We next examine whether state jurisdiction interferes with the goals of encouraging tribal self-sufficiency and economic development. Respondent does not argue and there is no record evidence indicating that the state's exercise of jurisdiction over the civil commitment of tribe members somehow threatens the economic development and self-sufficiency of the Red Lake Band. Instead, it is likely that state jurisdiction over Red Lake Band members would serve to benefit the tribe economically, as the cost of instituting a sex-offender program for sexually dangerous persons would be placed squarely on the state's shoulders.

▮ In addition, we must address whether state jurisdiction over respondent's commitment proceeding relates to an area that is so pervasively regulated by federal law that state regulation would obstruct federal policies. In 2006, the federal government enacted 18 U.S.C.A. § 4248 (West Supp.2007), which provides that if the court finds by clear-and-convincing evidence that a person in federal custody is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General. Section 4248(d) further states that the Attorney General shall release the person to the state in which the person is domiciled or was tried and that the state will assume responsibility for the person's custody, care, and treatment. But section 4248 did not become effective until July 27, 2006, after respondent was out of federal custody, and therefore is inapplicable to the facts here. Nonetheless, the 2006 enactment reflects a federal policy of referring sexually dangerous persons to the state system, even when the federal government otherwise has custody and jurisdiction. Therefore, we conclude that state jurisdiction over respondent does not relate to an area that is so pervasively regulated by federal law that state regulation would obstruct federal policies.

▮ Finally, we must consider the state's interest in civilly committing sexually dangerous members of the Red Lake Band. It is undeniable that the state has a compelling interest in protecting the health and safety of the public, including persons both on and off tribal land, from dangerous and repeat sex offenders. *See In re Linehan,* 557 N.W.2d 171, 181 (Minn. 1996) (stating that "[u]nder its police powers, the state has a compelling interest in protecting the public from sexual assault"). Indeed, the Minnesota Supreme Court has stated that there is a compelling governmental interest in "the protection of members of the public from persons who have an uncontrollable impulse to sexually assault." *In re Blodgett,* 510 N.W.2d 910, 914 (Minn.1994); *cf. Jones,* 729 N.W.2d at 15 (Anderson, J., concurring) (concluding that the state's interest in tracking the whereabouts of convicted kidnappers on

Indian reservations and in protecting potential kidnapping victims so as to justify enforcement of state predatory-offender registration statute is "so high" as to result in "as exceptional circumstance"). The state also has a compelling interest in the care and treatment of sex offenders and the mentally disordered. *See Addington v. Texas,* 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979) ("The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill."); *In re Linehan,* 557 N.W.2d at 181 (stating "[t]reating sexual predators for the disorders that explain their dangerousness serves and falls within the state's interest in protecting the public from sexual assault").

We conclude that the state's exercise of jurisdiction over the commitment of respondent is justified by strong state interests and does not significantly interfere with the federal interest in preserving tribal self-government, self-sufficiency, and economic development. Furthermore, we conclude that state jurisdiction does not "relate[ ] to an area that is so pervasively regulated by the federal government that state regulation would obstruct federal policies." *R.M.H.,* 617 N.W.2d at 64. Accordingly, we conclude that the district court erred when it granted respondent's motion to void the commitment order after determining that the state lacks subject-matter jurisdiction.

## DECISION

Because the state has both personal and subject-matter jurisdiction over respondent's commitment as a sexually dangerous person, we conclude that the district court erred when it granted respondent's motion to dismiss the commitment orders under rule 60.02(d).

**Reversed and remanded.**