**In the Matter of the CIVIL COMMITMENT OF Jeremiah Jerome JOHNSON**

and

**In the Matter of the Civil Commitment of Lloyd Robert Desjarlais.**

Nos. A09–2225, A09–2226.

Court of Appeals of Minnesota.

May 18, 2010.

Lori Swanson, Attorney General, Noah A. Cashman, Assistant Attorney General, St. Paul, MN, and Christopher Strandlie, Cass County Attorney, Walker, MN, for respondent.

Victor H. Smith, Smith Law Office, Walker, MN, for appellants.

Considered and decided by JOHNSON, Presiding Judge; HUDSON, Judge; and SCHELLHAS, Judge.

## OPINION

HUDSON, Judge.

Appellants, enrolled members of a federally recognized Indian tribe, challenge the district court's denial of their motions to dismiss the civil-commitment proceedings against them for lack of subject-matter jurisdiction. Appellants argue that: (1) Public Law 280 does not provide the state with jurisdiction to commit them as sexually dangerous persons; (2) civil commitment of members of the Minnesota Chippewa Tribe infringes on tribal sovereignty; and (3) civil commitment violates constitutional protections against double jeopardy. For the reasons set forth below, we affirm.

## FACTS

Appellants Lloyd Desjarlais and Jeremiah Johnson are enrolled members of the Minnesota Chippewa Tribe. Desjarlais is enrolled in the Leech Lake Band; Johnson is enrolled in the Bois Forte Band.[1]

In 2008, Cass County petitioned for each appellant to be civilly committed as a sexually dangerous person and as a sexual psychopathic personality. Each appellant stipulated to his civil commitment as a sexually dangerous person (SDP commitment), and the county agreed to dismiss the sexual-psychopathic-personality portions of the petitions. On April 15, 2009, the district court ordered the initial SDP commitments of Desjarlais and Johnson.

Appellants subsequently moved the district court to dismiss the commitment proceedings for lack of subject-matter jurisdiction. On July 14, 2009, the district court ordered the indeterminate SDP commitment of Desjarlais pursuant to Minn.

---

1. For the first time on appeal, Johnson asserts that he is "eligible for enrollment" in the Leech Lake Band. He does not claim to be an enrolled member of the Leech Lake Band, and he does not challenge the district court's finding that he is an enrolled member of the Bois Forte Band.

Stat. §§ 253B.02, subd. 18c, .185 (2008). On August 25, 2009, the district court ordered the indeterminate SDP commitment of Johnson. In both cases, the district court reserved decision on the issue of subject-matter jurisdiction.

On October 9, 2009, the district court denied appellants' motions to dismiss for lack of subject-matter jurisdiction. This court has consolidated appellants' separate appeals.

## ISSUES

I. Does Public Law 280 grant the state jurisdiction to civilly commit an enrolled member of a federally recognized Indian tribe as a sexually dangerous person?

II. In the absence of express congressional consent, does the state have jurisdiction to civilly commit an enrolled member of a federally recognized Indian tribe as a sexually dangerous person?

III. Does the statute providing for SDP commitment violate constitutional protections against double jeopardy?

## ANALYSIS

The existence of subject-matter jurisdiction is a question of law, which we review de novo. *In re Commitment of Beaulieu*, 737 N.W.2d 231, 235 (Minn.App. 2007). We also review the constitutionality of a statute de novo. *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn.1999).

## I

Appellants argue that Public Law 280 does not grant the state subject-matter jurisdiction to civilly commit them as sexually dangerous persons.[2] We agree.

Federal statutes and caselaw govern a state's jurisdiction over Indians. *State v. R.M.H.*, 617 N.W.2d 55, 58 (Minn. 2000). Through Public Law 280, Congress granted Minnesota broad criminal [jurisdiction] and limited civil jurisdiction over specified Indian country within the state. *Morgan v. 2000 Volkswagen*, 754 N.W.2d 587, 590 (Minn.App.2008) (citing Act of Aug. 15, 1953, Pub. L. No. 83–280, §§ 1162, 1360, 67 Stat. 588–90 (1953) (current version at 18 U.S.C. § 1162 (2006), 28 U.S.C. § 1360 (2006))).[3]

In *Bryan v. Itasca County*, the United States Supreme Court considered whether Public Law 280's grant of civil jurisdiction allowed Minnesota to levy personal property taxes against a mobile home on the reservation of the Leech Lake Band. 426 U.S. 373, 375, 96 S.Ct. 2102, 2104–05, 48 L.Ed.2d 710 (1976). The Court concluded that Public Law 280 conferred civil jurisdiction "over private civil litigation involving reservation Indians in state court" and over the adjudication of civil controversies, but did not confer "general state civil regulatory authority . . . to govern Indian reservations." *Id.* at 385, 387, 96 S.Ct. at 2109–10. The Court held that taxation was a general civil regulatory power, which could not be exercised by the state

---

**2.** For the first time on appeal, appellants assert that personal jurisdiction does not exist. Appellants have waived review of this issue by failing to raise it in the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that this court generally will not consider matters not argued to and considered by the district court); *In re Ivey*, 687 N.W.2d 666, 670 (Minn.App.2004) (stating that a defense of lack of personal jurisdiction can be waived), *review denied* (Minn. Dec. 22, 2004).

**3.** In 1973, Minnesota retroceded all criminal jurisdiction over the reservation of the Bois Forte Band. 1973 Minn. Laws ch. 625, § 3, at 1501.

through Public Law 280. *Id.* at 390, 96 S.Ct. at 2111–112.

In *California v. Cabazon Band of Mission Indians*, the United States Supreme Court considered whether a California Penal Code statute involving bingo could be enforced through Public Law 280. 480 U.S. 202, 204–07, 107 S.Ct. 1083, 1086–87, 94 L.Ed.2d 244 (1987). The Court noted that state jurisdiction under Public Law 280 depends on whether a law is "criminal in nature, and thus fully applicable to the reservation ..., or civil in nature, and applicable only as it may be relevant to private civil litigation in state court." *Id.* at 208, 107 S.Ct. at 1088. The Court then adopted the "prohibitory/regulatory distinction" to test whether a law may be enforced by a state under the authority of Public Law 280:

> [I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub. L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub. L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.

*Id.* at 209, 210, 107 S.Ct. at 1088. The Court concluded that the bingo statute, despite being enforceable by criminal means, was regulatory. *Id.* at 211, 107 S.Ct. at 1089.

*Cabazon* established that a statute to which a criminal penalty is attached can be regulatory and therefore outside Public Law 280's grant of criminal jurisdiction. Since *Cabazon* was decided, the Minnesota Supreme Court has considered the enforceability of several statutes through Public Law 280. In *State v. Stone*, the Minnesota Supreme Court held that statutes prohibiting certain motor-vehicle-re-

lated conduct—including driving without a license, speeding, and driving without a seatbelt—were regulatory for purposes of Public Law 280. 572 N.W.2d 725, 731 (Minn.1997). The *Stone* court also refined *Cabazon's* prohibitory/regulatory distinction by adopting a two-part test. *Id.* at 730 (stating that courts must first "determine the focus of the *Cabazon* analysis" and then determine whether the conduct is generally permitted or prohibited). In *State v. Busse*, an enrolled member of the White Earth Band was charged with a gross misdemeanor for driving on the White Earth reservation after his license had been cancelled as inimical to public safety. 644 N.W.2d 79, 80–81 (Minn.2002). The Minnesota Supreme Court applied the *Stone* test to the statute at issue and concluded that it was criminal/prohibitory and therefore enforceable pursuant to Public Law 280. *Id.* at 84–88. In *State v. Jones*, an enrolled member of the Leech Lake Band was charged with a felony for failing to register as a predatory offender. 729 N.W.2d 1, 2, 4 (Minn.2007). The supreme court applied the *Stone* test to the registration statute and concluded that it was criminal/prohibitory and therefore enforceable pursuant to Public Law 280. *Id.* at 12.

*Cabazon, Stone, Busse,* and *Jones* all addressed the problem of classifying a statute to which a criminal penalty is attached as a criminal or civil law for purposes of Public Law 280. But these cases did not involve an unquestionably civil law like the statute providing for SDP commitment. *See* Minn. Stat. § 253B.185; *In re Commitment of Rannow*, 749 N.W.2d 393, 396 (Minn.App.2008) (stating that commitment laws and proceedings are "civil in nature"), *review denied* (Minn. Aug. 5, 2008); *see also Addington v. Tex.*, 441 U.S. 418, 432–33, 99 S.Ct. 1804, 1812–13, 60 L.Ed.2d 323 (1979) (holding that the rea-

sonable-doubt standard does not apply in civil-commitment proceedings); *In re Linehan*, 594 N.W.2d 867, 871–72 (Minn. 1999) (holding that the statute providing for SDP commitment does not violate protections against double jeopardy because its purpose is treatment and not punishment); *Joelson v. O'Keefe*, 594 N.W.2d 905, 910 (Minn.App.1999) (rejecting argument that a jury trial is constitutionally required in commitment proceedings), *review denied* (Minn. July 28, 1999). Because the statute providing for SDP commitment is unquestionably civil in nature, we do not apply the *Cabazon* or *Stone* tests; instead, we determine whether SDP commitment falls within Public Law 280's limited grant of civil jurisdiction. *See Bryan*, 426 U.S. at 375–90, 96 S.Ct. at 2105–12 (determining whether the imposition of personal property taxes is within Public Law 280's grant of civil jurisdiction); *see also Cabazon*, 480 U.S. at 208, 107 S.Ct. at 1088 (noting that the Minnesota property tax levied in *Bryan* was "unquestionably civil in nature"); *Burgess v. Watters*, 467 F.3d 676, 684 (7th Cir.2006) (considering the application of Public Law 280 to a Wisconsin statute providing for the civil commitment of sexually violent persons and noting that "*Cabazon* is more helpful for distinguishing between civil and criminal cases for purposes of Public Law 280 than it is for drawing the line between civil cases that the state may entertain and those it may not").

Section 4 of Public Law 280 provides Minnesota with

> jurisdiction over civil causes of action between Indians or to which Indians are parties ... to the same extent that [the state] has jurisdiction over other civil causes of action, and those civil laws of [the state] that are of general application to private persons or private property shall have the same force and effect

within such Indian country as they have elsewhere within the State.

28 U.S.C. § 1360(a).

In *Bryan*, the United States Supreme Court determined that the primary intent of section 4 is "to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens" by granting certain states jurisdiction over private civil litigation involving reservation Indians in state court. 426 U.S. at 383, 385, 96 S.Ct. at 2108–09. The *Bryan* Court reasoned:

> Congress intended "civil laws" to mean those laws which have to do with private rights and status. Therefore, "civil laws ... of general application to private persons or private property" would include the laws of contract, tort, marriage, divorce, insanity, descent, etc., *but would not include laws declaring or implementing the states' sovereign powers*, such as the power to tax, grant franchises, etc. These are not within the fair meaning of "private laws."

*Id.* at 384 n. 10, 96 S.Ct. at 2108 n. 10 (emphasis added) (quotation omitted).

We conclude that SDP commitment is a form of civil regulation, not civil litigation between private parties. *See id.* at 384–86, 96 S.Ct. at 2109 (contrasting private civil litigation with general state civil regulatory control). The state is heavily involved in SDP commitment: it is a party to the commitment process and is responsible for providing aftercare and case-management services to committed persons. *E.g.*, Minn.Stat. § 253B.185, subds. 1, 6 (providing that petition for SDP commitment is to be prepared by a county attorney and making the state responsible for arranging and funding services to persons committed as sexually dangerous). SDP commitment is an implementation of the state's sovereign responsibilities to protect

its citizens from sexually dangerous persons and to treat and care for those persons. *See Hennepin County v. Levine*, 345 N.W.2d 217, 219 (Minn.1984); *Beaulieu*, 737 N.W.2d at 240–41 (holding that the state has a compelling interest in protecting persons both on and off tribal land from dangerous sex offenders). Indeed, involuntary civil commitment, which significantly deprives an individual of his or her liberty, is one of the most extreme forms of regulation conducted by the state. *Levine*, 345 N.W.2d at 219. Because SDP commitment is a form of civil regulation, it does not fall within Public Law 280's limited grant of jurisdiction over private civil litigation. Congress therefore has not expressly granted the state jurisdiction to civilly commit appellants as sexually dangerous persons.

## II

■■ Our jurisdictional analysis does not end with the conclusion that Public Law 280 does not expressly grant the state jurisdiction to civilly commit appellants as sexually dangerous persons. In the absence of the express consent of Congress, the state may exercise its authority over Indian country if exceptional circumstances exist and federal law does not preempt state jurisdiction. *Morgan*, 754 N.W.2d at 595; *Beaulieu*, 737 N.W.2d at 238 (citing *R.M.H.*, 617 N.W.2d at 58, and *Stone*, 572 N.W.2d at 731); *see also Cabazon*, 480 U.S. at 215, 107 S.Ct. at 1091 (noting that a state may assert jurisdiction over the on-reservation activities of tribal members in exceptional circumstances); *Jones*, 729 N.W.2d at 12 (G.B. Anderson, J., concurring) (stating that where Public Law 280 "does not expressly authorize state jurisdiction, we ask whether federal law preempts state jurisdiction").

In *Beaulieu*, this court determined that the state has subject-matter jurisdiction over the SDP commitment of an enrolled member of the Red Lake Band. 737 N.W.2d at 234. After determining that Congress had not expressly provided the state with jurisdiction to civilly commit members of the Red Lake Band,[4] we analyzed whether the operation of federal law preempted state jurisdiction. *Id.* at 238–41. This court considered four factors: (1) whether state jurisdiction would threaten the federal interest in encouraging Indian self-government; (2) whether state jurisdiction would interfere with the goals of encouraging tribal self-sufficiency and economic development; (3) whether state jurisdiction relates to an area that is so pervasively regulated by federal law that state regulation would obstruct federal policies; and (4) whether the interests of the state are sufficient to justify the assertion of state authority. *Id.* In applying *Beaulieu* to these appeals, we address each factor in turn.

### 1. Encouragement of Indian self-government

In *Beaulieu*, we determined that state jurisdiction over Beaulieu's SDP commitment did not threaten the federal interest in encouraging Indian self-government because "Red Lake does not have a civil-commitment law that allows for the commitment of sexually dangerous persons and does not operate an inpatient sex-offender treatment facility to house and rehabilitate such individuals." 737 N.W.2d at 240. Similarly, appellants in these cases have produced no evidence that the laws of the Bois Forte or Leech Lake bands provide for SDP commitment or that these bands operate treatment facili-

4. Public Law 280's grants of jurisdiction over Indian country exclude the reservation of the Red Lake Band. 18 U.S.C. § 1162(a), 28 U.S.C. § 1360.

ties to house and rehabilitate sexually dangerous persons.

## 2. Encouragement of tribal self-sufficiency and economic development

Appellants do not argue, and there is no record evidence establishing, that the economic development and self-sufficiency of the Bois Forte or Leech Lake bands are threatened by the state exercising jurisdiction to commit enrolled members as sexually dangerous persons. This factor supports the state's exercise of jurisdiction. *See id.* (concluding that an enrolled member of the Red Lake Band had failed to show that the band's economic interests were threatened by the state's exercise of jurisdiction over his SDP commitment and noting that state jurisdiction "would serve to benefit the tribe economically, as the cost of instituting a sex-offender program for sexually dangerous persons would be placed squarely on the state's shoulders").

## 3. Pervasiveness of federal law

Federal law provides that a person in federal custody may be civilly committed to the custody of the attorney general as a sexually dangerous person. 18 U.S.C. § 4248 (West 2010). But nothing in the record indicates that either Desjarlais or Johnson has ever been in federal custody. We also note that federal policy refers sexually dangerous persons to the state system even if the federal government otherwise has custody and jurisdiction. *See id.* § 4248(d) (requiring the United States Attorney General to release sexually dangerous persons to state custody if the state will assume responsibility for their custody, care, and treatment and requiring the attorney general to "make all reasonable efforts to cause [the state] to assume such responsibility").

## 4. Sufficiency of state interests

Finally, we consider the state's interests in civilly committing sexually dangerous members of the Bois Forte and Leech Lake bands. The state has at least two compelling interests. First, "[i]t is undeniable that the state has a compelling interest in protecting the health and safety of the public, including persons both on and off tribal land, from dangerous and repeat sex offenders." *Beaulieu*, 737 N.W.2d at 240; *see also In re Blodgett*, 510 N.W.2d 910, 914 (Minn.1994) (stating that the government has a compelling interest in protecting the public from "persons who have an uncontrollable impulse to sexually assault"). Second, the state "has a compelling interest in the care and treatment of sex offenders and the mentally disordered." *Beaulieu*, 737 N.W.2d at 241.

After considering the *Beaulieu* factors, we conclude that the state's exercise of jurisdiction over appellants' SDP commitments is justified by strong state interests and does not significantly interfere with the federal interests in preserving tribal self-government, self-sufficiency, and economic development. We also conclude that state jurisdiction does not relate to an area that is so pervasively regulated by federal law that state regulation would obstruct federal policies. Because exceptional circumstances exist and federal law does not preempt state jurisdiction, we conclude that the district court did not err by denying appellants' motions to dismiss the SDP proceedings for lack of subject-matter jurisdiction.

## III

Appellants argue that the statute providing for SDP commitment violates constitutional protections against double jeopardy. Appellants' arguments are premised entirely on the state exercising jurisdiction over SDP commitments pursu-

ant to Public Law 280. Because we conclude that Public Law 280 does not grant the state jurisdiction, appellants' arguments are unavailing. We also observe that the Minnesota Supreme Court has held that the statute providing for SDP commitment does not violate constitutional protections against double jeopardy, *In re Linehan*, 594 N.W.2d at 871–72, and our decision is governed by that determination. *See Lake George Park, L.L.C. v. IBM Mid–America Employees Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn.App.1998) (stating that "[t]his court, as an error correcting court, is without authority to change the law"), *review denied* (Minn. June 17, 1998).

### DECISION

Because SDP commitment is a form of civil regulation and not private civil litigation, the state does not have subject-matter jurisdiction pursuant to Public Law 280 to commit appellants as sexually dangerous persons. But because exceptional circumstances exist and federal law does not preempt state jurisdiction, the state has subject-matter jurisdiction to commit appellants as sexually dangerous persons. Because appellants' double-jeopardy challenge to the statute providing for SDP commitment is premised on the state exercising jurisdiction pursuant to Public Law 280, and because the statute providing for SDP commitment does not violate constitutional protections against double jeopardy, appellants' double-jeopardy arguments are without merit. Accordingly, the district court properly denied the motions to dismiss.

**Affirmed.**